IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CLUB ENVY OF SPOKANE, LLC, a Washington limited liability company; DAVID LARGENT, a married man dealing in his separate property; RIDPATH PENTHOUSE, LLC, a Washington limited liability company; 515 SPOKANE PARTNERS, LLC, a Nevada limited liability company, | ) ) ) ) ) ) ) ) ) | No. 31913-0-III |
| Respondents, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| THE RIDPATH TOWER CONDOMINIUM ASSOCIATION, a Washington non-profit corporation; RIDPATH REVIVAL, LLC, a Washington limited liability company; FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Bank of Whitman, | ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

BROWN, A.C.J. — Today, we examine a dispute stemming from the 2008

conversion of Spokane's Ridpath Hotel into condominiums. Ridpath Revival, LLC

(Revival) appeals the trial court's summary judgment declaration granting relief to Club

Envy of Spokane, LLC, David Largent, Ridpath Penthouse, LLC, and 515 Spokane

Partners, LLC (collectively Club Envy). Club Envy asked the trial court to declare void a Second Amended and Restated Declaration of Covenants, Conditions, and Restrictions (CCRs). Club Envy argued RCW 64.34.264 and 64.34.348 prohibited certain acts embodied in the second amended declaration taken by the former officers and directors of The Ridpath Tower Condominium Association, and its president, Greg Jeffreys. Revival contends (1) Club Envy's action is barred by the statute of limitations, equitable estoppel, and laches; (2) genuine issues of material fact exist regarding whether the amended CCRs are void; (3) the court wrongly dismissed all claims in summary judgment; and (4) judicial misconduct. We affirm.

## FACTS

On February 20, 2008, the Ridpath's owner, 515 Washvada Investments, LLC, created the Ridpath Tower Condominium. The tower became an 18-unit condominium complex and the Ridpath Tower Condominium Association was formed. The tower included common elements shared by the owners.

The first amended declaration of CCRs, recorded on June 12, 2008, divided Unit 18, spanning 12 floors, into Units 18 and 19. The second amended declaration, recorded on August 28, 2008, divided Unit 18 into Units 18, 20 and 21. It lowered each association member's voting rights from 5.263 percent to 4.762 percent and converted some common elements to private ownership. Both amendments were executed by Mr. Jeffreys. Mr. Jeffreys has since been convicted on a series of federal fraud charges unrelated to these transactions. Revival purchased Units 20 and 21, as well as Unit 3,

2

in January 2013. During discussions to purchase, no discussion took place regarding the validity of the second amended declaration.

The majority of owners desired to develop the Ridpath tower into low-rent, micro-apartments. Revival, however, planned to develop rooftop Units 20 and 21 back into a luxury hotel. Club Envy sued for declaratory relief, requesting the court declare the second amended declaration void for lack of proper approval by the requisite percentage of condominium members and terminate Revival's interests in Units 20 and 21. Club Envy additionally asked the court to declare the use restriction in the first amended declaration does not prohibit rental of micro-apartments. Club Envy requested summary judgment on its request for declaratory relief. Revival filed a cross motion for summary judgment on the ground Club Envy's claims were barred as a matter of law by RCW 64.34.264(2)'s one-year statute of limitations.

During the summary judgment hearing, the trial judge commented she previously had "a lot of cases involving this sort of thing with the same gentleman, with Mr. Jeffreys, and they're not normal or typical. They're all just like huge messes involving a lot of people tragic a lot." Report of Proceedings (RP) at 65-66. The judge further stated, "Mr. Jeffreys . . . has shown a lot of creativity that takes all of these situations outside everything that a lot of us have seen before." RP at 71. The judge commented, "what if hypothetically, say, Mr. Jeffreys had some other things going on with this whole transaction that wouldn't pass muster and we kept looking at what went on with this whole deal." RP at 83.

3

The court granted Club Envy's motion and denied Revival's motion. The court noted in its order, "There was some discussion at oral argument as to whether the granting of Plaintiffs' Motion for Summary Judgment would dispose of the case in total. The Court grants the motion as framed, and deems the matter resolved." Clerk's Papers (CP) at 607 n.1. Revival appealed.[1]

ANALYSIS

A. Revival's Defenses

The issue is whether the trial court erred in denying Revival's request to summarily dismissing Club Envy's claims as time barred under RCW 64.34.264(2), and/or under principles of equitable estoppel or laches.

We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Auto. United Trades Org. v. State*, 175 Wn.2d 537, 541, 286 P.3d 377 (2012). Summary judgment is proper when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. CR 56(c); *Huff v. Budbill*, 141 Wn.2d 1, 7, 1 P.3d 1138 (2000). We construe facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794, 64 P.3d 22 (2003). Summary judgment is appropriate if reasonable persons could reach but one conclusion. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

---

[1] The Ridpath Tower Condominium Association and Federal Deposit Insurance Corporation were defendants below with Revival, but do not join Revival on appeal.

*Statute of Limitations.* Whether a claim is time barred is a legal question we review de novo. *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). A statute of limitations is designed to protect individuals and courts from stale claims. *Burns v. McClinton*, 135 Wn. App. 285, 293, 143 P.3d 630 (2006). A statutory period begins to run when the plaintiff's cause of action accrues. *Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996).

The Washington Condominium Act (WCA), chapter 64.34 RCW, was enacted in 1989 and governs condominiums created after July 1, 1990. RCW 64.34.010. The WCA establishes the procedure by which condominium instruments may be amended and the procedure for challenging such amendments. RCW 64.34.264(2) provides, "No action to challenge the validity of an amendment *adopted by the association pursuant to this section* may be brought more than one year after the amendment is recorded." (Emphasis added.) Thus, our question becomes whether all amendments must be challenged within one year or solely those adopted by the association under the WCA. In interpreting a statute, we first look to its plain language. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language of the statute is unambiguous, our inquiry ends. *Id.* RCW 64.34.264(2)'s plain language states a challenge to an amendment "adopted by the association pursuant to this section" may not be brought more than one year after the amendment is recorded. RCW 64.34.264(2). Here, however, the parties contest whether a properly adopted amendment by the association exists under the WCA.

5

*America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117, 133 (R.I. 2004) is instructive. There, the Rhode Island Supreme Court analyzed a similar statute and held the one-year limitation did not apply. The statute stated, "No action to challenge the validity of an amendment *adopted by the association pursuant to this section* may be brought more than one year after the amendment is recorded." R.I. GEN. LAWS § 34-36.1-2.17(b) (1956) (emphasis added). The plaintiffs in *American Condominium* brought a suit challenging the voting procedure employed to extend development rights and, consequently, argued the amendments extending those rights were invalid. The court held, "[W]hen, as here, the amendment being challenged is determined to be void *ab initio,* the one-year statute of limitations does not apply to any subsequent action taken by an interested party . . . the hearing justice did not err in rejecting defendants' statute of limitations defense." *Am. Condo. Ass'n*, 844 A.2d at 133.

Washington courts have not specifically addressed this issue. But, in *Keller v. Sixty-01 Associates of Apartment Owners*, 127 Wn. App. 614, 621, 112 P.3d 544 (2005), the defendants raised a timeliness defense. In remanding the matter on another issue, Division One of this court noted, "the trial court must determine on remand whether the 1992 amendment was properly adopted. . . . If it was void, the Board's action in 1999 is inconsequential and this issue is moot." In other words, if the amendment was void from its inception because it was not "*adopted by the association*

*pursuant to this section*" then RCW 64.34.264(2)'s time limitation does not apply. (Emphasis added.)

Based on both *American Condominium Association* and *Keller*, and the plain meaning of RCW 64.34.264(2), Club Envy's challenge to the validity of the amendment as not being properly passed by the association pursuant to the WCA is not barred by RCW 64.34.264(2)'s one-year limitation.

*Equitable Estoppel/Laches.* The action is not barred by the doctrines of equitable estoppel and laches. A party asserting an equitable remedy has the burden to prove the requirements of that remedy. *See King County v. Taxpayers of King County*, 133 Wn.2d 584, 642, 949 P.2d 1260 (1997) (party asserting equitable defense of laches has burden of proof); *Teller v. APM Terminals Pac., Ltd.*, 134 Wn. App. 696, 712, 142 P.3d 179 (2006) (party asserting equitable estoppel must prove each of its elements by clear, cogent, and convincing evidence).

Revival argues Club Envy is estopped from challenging the second amended declaration. The elements of equitable estoppel are "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act." *Finch v. Matthews*, 74 Wn.2d 161, 171 n.3, 443 P.2d 833 (1968). This doctrine is not favored and must be proved by clear, cogent, and convincing evidence. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992).

7

The parties focus on element two; the reliance element. Revival claims it relied on some of the condominium owners' silence. "Estoppel by silence does not arise without full knowledge of the facts and a duty to speak on the part of the person against whom it is claimed." *Codd v. Festchester Fire Ins. Co.*, 14 Wn.2d 600, 606, 128 P.2d 968 (1942). "'Full knowledge of the facts is essential to create an estoppel by silence or acquiescence.'" *Id.* at 607(quoting *Blanck v. Pioneer Mining Co.*, 93 Wash. 26, 34, 259 P. 1077 (1916). "Mere silence, without positive acts, to effect an estoppel, must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known or had reasonable grounds for believing that the other party would rely and act upon his silence." *Id.* The neighbors of a seller have no obligation to disclose facts to a prospective buyer.

Revival's founder, Arthur Coffey, declared he met with three condominium owners and they did not mention, "the Second Amended Declaration was not valid or that Units 20 or 21 were improperly created or subdivided." CP at 508. This is consistent with these owner's declarations that they were not aware of the amendment. Under the clear language of *Codd*, this is not enough to satisfy element two of an equitable estoppel claim. Moreover, no evidence in our record shows Revival relied on these conversations to confirm title and proceed with its purchase. Instead, the evidence on our record shows Revival relied on the title insurance company to provide title information. Revival dealt directly with Mr. Jeffreys not Club Envy. Assertions that association members were aware of the invalidity of the second amended declaration

8

and chose to remain silent are, at best, speculative. Elements established by virtue of speculation or conjecture are insufficient to warrant estoppel. *Pub. Util. Dist. No. 1 of Douglas County v. Cooper*, 69 Wn.2d 909, 918, 421 P.2d 1002 (1966). Without a showing of all elements, Revival's estoppel argument fails.

Next, Revival argues the doctrine of laches prevents Club Envy from challenging the second amended declaration. Laches is an equitable defense involving, "(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he [or she] has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; [and] (3) damage to defendant resulting from the unreasonable delay.'" *Citizens for Responsible Gov't v. Kitsap County*, 52 Wn. App. 236, 240, 758 P.2d 1009 (1988) (quoting *Buell v. City of Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972)).

Revival fails to show Club Envy was aware of its rights and sat on them for an "unreasonable" amount of time. *Citizens for Responsible Gov't*, 52 Wn. App. at 240. Mr. Coffey's testimony is that he met with various association members to discuss ownership before he purchased Units 20 and 21. Nothing indicates the association members were aware the second amended declaration was void or that it even existed. While Revival may be able to show damages, without the other elements of a laches defense, Revival's claim must fail. Accordingly, Revival cannot avail itself of a laches defense under the circumstances presented here.

9

B. Summary Judgment

The issue is whether the trial court erred in summarily declaring the second amended declaration void and dismissing all claims. Revival contends either reasonable minds could solely find in its favor, or genuine issues of material fact remain to preclude summary judgment.

"A condominium declaration is like a deed, the review of which is a mixed question of law and fact." *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). The factual issue is the declarant's intent that we discern from the face of the declaration; the declaration's legal consequences are questions of law we review de novo. *Id.*

A condominium declaration is a document unilaterally creating a type of real property. *Bellevue Pac. Ctr. Condo. Owners Ass'n v. Bellevue Pac. Tower Condo. Ass'n*, 124 Wn. App. 178, 188, 100 P.3d 832 (2004). A declaration can solely be amended by compliance with the WCA. *Id.* A condominium association board of directors may not amend a declaration, solely the unit owners may do so. RCW 64.34.264; RCW 64.34.308(2).

General amendments may be enacted solely by a vote or agreement of 67 percent of the votes allocated in the association, or any larger percentage the declaration specifies. RCW 64.34.264(1). Here, the original declaration states, to amend a declaration it must be approved by "at least ninety percent (90%) of all the

Voting Interests." CP at 58. And, "[a] certificate, signed and sworn to by two (2) officers of the Association, that the record Owners of the required number of Units (and the required number of first mortgagees, where applicable) have either voted for or consented in writing to any amendment." CP at 58.

Additionally, RCW 64.34.264(4) expressly forbids amendments that "may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, the allocated interests of a unit, or the uses to which any unit is restricted" without the vote of "the owner of each unit particularly affected." Because the second amendment changed the voting interests of all the members it had to be approved by all the owners. Thus, the second amended declaration was not allowed under RCW 64.34.264(4).

Here, Club Envy submitted several declarations by condominium owners indicating they did not approve the change. The sole evidence to the contrary was an unsworn certificate attached to the second amendment by Mr. Jeffreys and another owner. This unsworn certificate alone is insufficient to meet the requirements of RCW 64.34.264(1); it is further insufficient to create a genuine issue of material fact where none exists. A party opposing summary judgment "may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 157, 52 P.3d 30 (2002).

11

The record shows the second amended declaration (which created more units, lowered each unit owner's voting rights, and converted some common elements to private ownership) was not passed by all members as statutorily required. Accordingly, the second amended declaration was void ab initio; the trial court properly granted Club Envy's motion for summary judgment, declaring the declaration as such.

Because the second amended declaration was void, the trial court properly dismissed Club Envy's other claims relating to application of second amended declaration's voting rights to terms in the first amended declaration. Club Envy acquiesces indicating "resolving the validity of the Second Amended Declaration created an entire resolution to the matter." Resp't Br. at 38.

C. Judicial Misconduct Allegation

The issue is whether the trial court's summary judgment order should be vacated based on judicial misconduct. Revival contends the judge should have recused herself because her prior knowledge of Mr. Jeffreys caused "actual or apparent unfairness and bias." Appellant's Br. at 2. This issue is raised for the first time on appeal. Because an appearance of fairness claim is not a "constitutional" claim pursuant to RAP 2.5(a)(3), we will generally not consider it for the first time on appeal. *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008).

In any event, to prevail on an appearance of fairness claim, Revival must present evidence of actual or potential bias. *State v. Post*, 118 Wn.2d 596, 618-19, 826 P.2d 172, 837 P.2d 599 (1992). The "critical concern in determining whether a proceeding

12

No. 31913-0-III
*Club Envy of Spokane v. Ridpath Tower Condo. Assoc.*

satisfies the appearance of fairness doctrine is how it would appear to a reasonably prudent and disinterested person." *Chi., Milwaukee, St. Paul. & Pac. R.R. Co. v. Wash. State Human Rights Comm'n*, 87 Wn.2d 802, 810, 557 P.2d 307 (1976). We presume trial judges perform their functions regularly and properly, without prejudice or bias. *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993).

Here, the judge's comments noted in the facts section show the judge was familiar with Mr. Jeffreys, they do not show actual or potential bias against Revival. Indeed, many parties are repeatedly before the same judge, but that alone does not violate the appearance of fairness doctrine. *See State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006) (frequency of appearance before a judge does not, without more, create an appearance of partiality that requires recusal from a matter).

Affirmed.

_____
Brown, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawerence-Berrey, J.

13