**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| PUYALLUP RIDGE, LLC, a Washington limited liability company, | No. 47843-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| COURTNEY RIDGE ESTATES OWNERS ASSOCIATION, a Washington non-profit corporation, | |
| Appellant. | |

SUTTON, J. — This appeal relates to two undeveloped parcels (Units E and F), later acquired by Puyallup Ridge LLC, in the condominium development plan recorded by the Courtney Ridge Estates Master Association (Master Association) through a Master Declaration. Courtney Ridge Estates Owners Association (Courtney Ridge) appeals from the trial court's order granting summary judgment to Puyallup Ridge, and claims residual membership, ownership interest, and voting rights in the Master Association. Courtney Ridge argues that the trial court erred because (1) Courtney Ridge is a sub-association of the Master Association, and (2) the language in the Master Declaration did not meet the statutory requirements to automatically withdraw the airspace units under the Washington Condominium Act (WCA).[1]

---

[1] Chapter 64.34 RCW.

We conclude that (1) there is no sub-association relationship between Courtney Ridge and the Master Association, and that (2) once developed, the four airspace units at issue (Units A through D) were effectively withdrawn from the Master Association and transferred to Courtney Ridge. Thus, we hold that Courtney Ridge has no membership or residual interest in the Master Association and no voting rights related to Puyallup Ridge's January 2014 amendment to the Master Declaration. We affirm.

FACTS

A. FACTUAL BACKGROUND

Riech Land Inc. acquired the undeveloped property at issue in 2006 and transferred it to Courtney Ridge LLC (Declarant). The Declarant recorded the site plan, survey map,[2] and Condominium Declaration[3] of the Courtney Ridge Estates Master Association (an airspace condominium).[4] The Master Condominium consisted of six undeveloped parcels of land as "airspace units," Units A through F, intended to be developed in phases. Four of the units were eventually developed and, through four amendments to the Master Declaration, were withdrawn from the Master Condominium, and transferred to the Courtney Ridge Estates Condominiums (Courtney Ridge).

---

[2] The survey map and plans are recorded under Pierce County recording number 200703195003.

[3] Hereinafter referred to as the "Master Declaration." The Master Declaration was recorded on March 19, 2007, under Pierce County recording number 200703190705.

[4] Hereinafter referred to as the "Master Condominium" and "Master Association."

The relevant provision stated,

> 33.1 Declarant's Right. [The Master Condominium] consists of six (6) airspace units. The Declarant reserves the right to withdraw each airspace unit from [the Master Condominium] and then convert that Condominium into another Condominium known as Courtney Ridge Estates Condominiums so that within each airspace unit there would be created units within buildings to be constructed in the airspace. Upon including that airspace unit within the condominium to be known as Courtney Ridge Estate Condominiums, it shall be withdrawn from [the Master Condominium] and shall not be subject to any of the restrictions or conditions set forth in [the Master Declaration].

Clerk's Papers (CP) at 98. The Master Declaration further provided that Courtney Ridge Condominiums "shall be established in phases and each phase shall constitute an airspace unit as created under [the Master Declaration]." CP at 99.

The Declarant exercised this right, and recorded an amendment for "Phase I," which developed "Unit A." CP at 170. That amendment stated that "Unit A of [the Master Association] *is and will constitute* the first phase of [the Courtney Ridge Condominiums] . . . and shall not be subject to any of the restrictions or conditions" of the Master Declaration. CP at 170 (emphasis added). The subsequent amendments contained the same language regarding the development and inclusion of Units B through D into the Courtney Ridge Condominiums.

Along with the amendments, the Declarant recorded certificates, survey maps, and plans. The survey maps and plans outlined the same boundaries as the Master Condominium, but each of the recorded amendments referenced the individual units. The declaration for "Phase IV" described the property in the amendment as "Airspace Unit D" and explicitly excepted from the

3

amendment the prior airspace units of the Courtney Ridge Condominium from inclusion in the amendment.[5]

After the original Declarant recorded the amendment and developed the fourth airspace unit, it went bankrupt and transferred title to the two remaining airspace units, E and F, to the bank. Puyallup Ridge then acquired the title to "Airspace Units E and F" of the Master Association in October 2013.

Puyallup Ridge intended to build 22 rental apartments in airspace Units E and F with a design consistent with the Master Association's original design. On January 28, 2014, Puyallup Ridge executed and recorded an amendment to the Master Declaration reducing the minimum rental period from six months to thirty days and removing the restrictions on the number of rental tenants permitted. In a letter dated January 8, 2014, Puyallup Ridge advised Courtney Ridge of its plans regarding Units E and F.

B. PROCEDURAL BACKGROUND

In December 2014, Puyallup Ridge filed suit. Courtney Ridge filed its answer, affirmative defenses, and counterclaims. Puyallup Ridge filed its motion for summary judgment, which the trial court heard in May 2015.

After argument, the trial court entered its order for summary judgment in favor of Courtney Ridge. Puyallup Ridge moved for reconsideration and the trial court entered an order granting

---

[5] Units A through C. The certification describes the property in the amendment as "Airspace Unit D of [the Master Condominium]," provides the Pierce County record number for the Master Declaration recording number and Master Condominium survey map and plans recording number, and states "Excepting therefrom any portion lying within amendment to Courtney Ridge Estates recorded under Pierce County Auditor's file no. 200805285014." CP at 422.

reconsideration of its prior ruling and granted summary judgment in favor of Puyallup Ridge. Courtney Ridge appeals.

## ANALYSIS

The parties agree on the underlying facts of the case, but disagree on whether the amendments to the Owner's Declaration effectively withdrew the four airspace units from the Master Association and whether the Courtney Ridge owners have any interest, membership, or voting rights in the Master Association.

A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review a grant of summary judgment de novo. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 599, 337 P.3d 1131 (2014). Summary judgment is proper when there is "'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting CR 56(c)). We construe facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Club Envy*, 184 Wn. App. at 599.

All condominiums are created by statute. *Shorewood West Condo. Ass'n v. Sadri*, 140 Wn.2d 47, 52 992 P.2d 1008 (2000). The WCA governs all condominiums created after July 1, 1990. *Shorewood West*, 140 Wn.2d at 52. Because condominiums are statutory creations, the rights and duties of condominium unit owners are different from those of real property owners at common law. *Shorewood West*, 140 Wn.2d at 53.

> A condominium may be created pursuant to [the WCA] only by recording a declaration executed by the owner of the interest subject to this chapter in the same manner as a deed and by simultaneously recording a survey map and plans pursuant to RCW 64.34.232.

RCW 64.34.200(1). A condominium declaration is like a deed, which we review as a mixed question of law and fact. *Lake*, 169 Wn.2d at 526. The factual issue is the declarant's intent, and the declaration's legal consequences are questions of law which we review de novo. *Club Envy*, 184 Wn. App. at 603.

B. MASTER ASSOCIATION

Courtney Ridge argues that it is a sub-association of the Master Association, has delegated some of its powers to the Master Association, and by virtue of the relationship between it and the Master Association, Courtney Ridge could never be fully withdrawn from the Master Association. Puyallup Ridge argues that Courtney Ridge's argument has no basis in law or the Master or Owners Declarations to support its argument. We agree with Puyallup Ridge.

RCW 64.34.276(1) describes a master association as an entity to which the declaration provides or delegates any of the powers of one or more other associations "for the benefit of the unit owners." *Bellevue Pac. Ctr. Condo. Owners Ass'n v. Bellevue Pac. Tower Condo. Ass'n*, 124 Wn. App. 178, 189, 100 P.3d 832 (2004). For RCW 64.34.276(1) to apply, the following three elements must be met:

> (1) [T]he declaration of the owners' associations must provide that powers granted to them by the WCA are to be exercised or delegated to another corporation; (2) that corporation exercises those powers on behalf of the development; and (3) there is one or more condominiums.

*Bellevue Pac.*, 124 Wn. App. at 189. When there is no delegation in the declaration, the declaration does not create a master association. *Bellevue Pac.*, 124 Wn. App. at 190. Here, there is no delegation of powers in either declaration, and neither is there any indication that the Master

6

Association exercises any powers on behalf of the Courtney Ridge Owners. Thus, we hold that Courtney Ridge is not a sub-association of the Master Association.

C. DECLARATION & WITHDRAWAL OF UNITS

Courtney Ridge argues that the Owners Declaration and Master Declaration lacked the "statutorily required elements in order to effectuate a withdrawal" of the units from the Master Association. Br. of Appellant at 15. While we agree that the withdrawal was imperfect, we hold that it does not invalidate the plain language of the Master Declaration.

1. Statutory Requirements

A condominium declaration is a document unilaterally creating a type of real property, and can be solely amended by compliance with the WCA.[6] *Bellevue Pac.*, 124 Wn. App. at 188. At the same time the declaration is recorded, the survey map and plan for the condominiums must also be recorded. RCW 64.34.200(1).

RCW 64.34.232 requires that the survey map and plans be recorded when any amendments to the declaration are made. RCW 64.34.232(1). Courtney Ridge argues that the survey map's failure to label the airspace units with "MAY BE WITHDRAWN FROM THE CONDOMINIUM" as required by RCW 64.34.232(2) renders the withdrawal ineffective.[7] Br. of Appellant at 18-19. But Courtney Ridge ignores another subsection that states,

> Upon exercising any development right, the declarant shall record either a new survey map and plans necessary to conform to the requirements of subsections (1), (2), and (3) of this section *or new certifications of a survey map and plans*

---

[6] RCW 64.34.

[7] Courtney Ridge does not argue that the survey map and plans for Phase I are invalid.

> *previously recorded if the documents otherwise conform to the requirements of those subsections.*

RCW 64.34.232(6) (emphasis added). Here, the Declarant chose the second option, filing a new certification of the previously recorded survey map and plan.

The certification accompanying the first amendment to the Master Declaration adding "Phase I" to Courtney Ridge Estates Condominium included a property description referencing "Unit A" of the Master Association. When the Declarant filed the amendment for the "Phase IV" addition, the property description in that certification referenced "Unit D" of the Master Association, additional language in the property description read, "Excepting therefrom any portion lying within amendment to Courtney Ridge Estates recorded under Pierce County Auditor's File No. 200805285014." CP at 422. The same, unaltered survey map was recorded with each phase.

A plain reading of the certification indicates that the intent of the amendments was to withdraw the airspace Units A-D, although the recording of the unaltered survey map was statutorily imperfect. We hold that the alleged imperfection does not invalidate the plain language of the certification or the Master Declaration as analyzed below.

2. Declarant's Intent

We discern the declarant's intent from the face of the declaration. *Club Envy*, 169 Wn.2d at 526. The Master Declaration provides:

> 33.1 <u>Declarant's Right</u>. [The Master Condominium] consists of six (6) airspace units. The Declarant reserves the right to withdraw each airspace unit from [the Master] Condominium and then convert that Condominium into another Condominium known as Courtney Ridge Estates Condominiums so that within each airspace unit there would be created units within buildings to be constructed

8

in the airspace. Upon including that airspace unit within the Condominium to be known as Courtney Ridge Estates Condominiums, it shall be *withdrawn* from [the Master Condominium] and *shall not be subject* to any of the restrictions or conditions set forth in this Declaration.

CP at 98 (emphasis added). The Declarant exercised this right under Paragraph 33.1, recording the four amendments to the Master Declaration, transferring Units A, B, C, and D from the Master Condominium to Courtney Ridge Estates, thus subjecting them to the Owner's Declaration.

Each amendment contained the following identical language, changing only the reference to the unit and phase,

1. Unit A of [the Master Association] is and will constitute the first phase of Courtney Ridge Estates.

2. Pursuant to the provisions of [the Master Declaration], each condominium unit of the Courtney Ridge Estates created *within said airspace units* shall not be subject to any of the restrictions or conditions as set forth in [the Master Declaration].

CP at 170-81.

The Owners Declaration also provides that:

For each subsequent phase following Phase 1, the Declarant shall execute and record an amendment to [the Owners Declaration] stating that said subsequent phase is established as a Condominium under the [WCA]. From and after the recording of said amendment, *all of the land within Phase 1 and within the subsequent phase for which such an amendment has been recorded, together with all units, shall constitute a single Condominium*.

CP at 159 (emphasis added). The words "shall" and "withdraw" in the Master Declaration when read with the amendments' provision that the unit "is and will constitute" the development phase of Courtney Ridge, are unambiguous. Upon recording the amendment, the Declarant's intent expressed in the Master Declaration was that the airspace unit would be fully withdrawn from the

9

Master Association and not subject to the rights and restrictions of the Master Declaration, the effect of which is to leave the members of the Owners Association subject only to the Owners Declaration.

Thus, the plain language of the Master Declaration, the amendments, and the survey certifications plainly creates another condominium. Thus, we hold that Units A-D were effectively withdrawn from the Master Association and made subject to, and included in, the Courtney Ridge Owner's Association.[8]

D. RESIDUAL OWNERSHIP INTEREST AND VOTING RIGHTS

Courtney Ridge argues that, because they have an "allocated interest in the common elements of the Master Association," individual unit owners are members of the Master Association and retain voting rights in the Master Association. Br. of Appellant at 24-26. We disagree.

The Master Declaration explicitly defines the terms "common elements or facilities," "owner," "unit," and "unit owner." CP at 4, 6-7.

> 1.7.9 "Common Elements or Facilities" means all portions of the Condominium other than the Units.
>
> . . . .
>
> 1.7.27 "Owner" or "Unit Owner" shall mean the Owner of record, whether one or more persons, of a *Unit*.
>
> . . . .

---

[8] The legislature intended the WCA to have strong consumer protection provisions. *See One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Inv., Inc.*, 148 Wn.2d 319, 330-31, 61 P.3d 1094 (2002). But Courtney Ridge owners were not mislead as to the contents of the declarations, the plans for phased development of the airspace units, or the withdrawal of the developed phases, nor do they claim they were misled.

　　　　　1.7.36 "Unit" means a physical portion of the Condominium designated for separate ownership, the boundaries of which are described in the Survey Map and Plans and in this Declaration.

　　　　　1.7.37 "Unit Owner" means a Declarant or other person who owns a Unit, but does not include a person who has an interest in the Unit solely as security for an obligation. Unit Owner also means the vendee, not the vendor, of a Unit under a real estate contract.

CP at 51, 53-54 (emphasis added).

A member of the Master Association is defined in the following: "[An] Owner (including Declarant) shall be a member of the Association and shall be entitled to one membership for each Unit so owned. . . . Ownership of a Unit shall be the sole qualification for membership in the Association." CP at 58-59. Owners, qualified Master Association members, have one vote per unit owned in the condominium.

The Master and Owners Declarations also provide mutually reciprocal easements over the other units. The Master Declaration reserves easements over the common elements owned by the Master Association "for the benefit of all unit owners of condominium units which may be created within each airspace unit." CP at 99. The Master Declaration also reserves the right to "withdraw and transfer all of the common elements" to Courtney Ridge "subject to the condition that the airspace units transferred into [Courtney Ridge] shall have easements rights of ingress and egress over said common elements." CP at 99. The Owners Declaration provides for similar access easements and establishes the obligation of the easement holders "to pay a prorata share (based on relative number of living units) of the costs of subsequent repairs, maintenance and operation" of the "utilities, roadway[] [and recreational facilities]." CP at 161.

11

There is no indication in the Master Declaration or the Owners Declaration that Courtney Ridge members hold any residual membership or ownership interest in the Master Association from their interest in the common elements. The Master Declaration specifically exempts units from the definition of "[c]ommon [e]lements or [f]acilities." CP at 51. Owners/ownership is limited to unit ownership and does not include any interest in common elements, and only owners can qualify as voting members of the Master Association.

Further, it is clear from the easement provisions that, once the airspace units were withdrawn from the Master Condominium, the common elements of the roadways, utilities, and recreational facilities were available to Courtney Ridge through an easement, and not through any ownership interest. A share in the repair and maintenance of the common elements does not equate to a residual membership or ownership interest. Thus, we hold that Courtney Ridge members have no residual membership or ownership interest in the Master Association based on the easements over the common elements. We also hold that because they were not qualified voting members in the Master Association, that the Courtney Ridge members had no voting rights for the Puyallup Ridge amendment to the Master Declaration.

## CONCLUSION

We hold that (1) there is no sub-association relationship between Courtney Ridge and the Master Association, (2) airspace Units A through D were effectively withdrawn from the Master Association because the declarant's intent to fully withdraw each airspace unit from the Master Association is apparent from the Master Declaration's plain language, (3) there is no residual membership or ownership interest in the common elements of the Master Association, and (4)

No. 47843-9-II

Courtney Ridge members were not qualified voting members in the Master Association. Therefore, Courtney Ridge had no voting rights regarding Puyallup Ridge's January 2014 amendment to the Master Declaration. Thus, we affirm the trial court's order granting summary judgment to Puyallup Ridge.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

JOHANSON, J.

13