# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON , | ) | No. 76037-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LINDA KAY HARPER, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 23, 2017 |
| | ) | |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 JAN 23 AM 11:

APPELWICK, J. — The trial court terminated Harper from drug court. Harper argues that she did not receive adequate notice and opportunity to be heard prior to termination. She also argues that the trial court violated the appearance of fairness doctrine, improperly ordered her to pay her remaining $30 drug court balance, and that counsel was ineffective. We affirm.

## FACTS

Linda Harper was charged with five counts of identity theft and five counts of forgery. She entered the Thurston County Drug Court program. Drug court participants must sign a contract that requires them to abide by program requirements. If a participant does not abide by the requirements, the contract gives the trial court the discretion to terminate the participant from the program.

Harper signed the drug court contract on November 3, 2015. Following a hearing on November 10, the trial court imposed a 16 hour community service sanction against Harper, because she missed a drug education program, failed to appear at an orientation, and missed a 12-step meeting. After another hearing on November 17, the trial court imposed a second sanction of 7 days in jail for more missed meetings and 2 failed urinary analyses. At the November 17 hearing, the State also noted aloud that it was prepared to seek Harper's termination from the program. At both hearings, Harper had an opportunity to address the allegations.

At a December 1 hearing, with Harper and her attorney present, the State presented a petition alleging non-compliance with conditions of drug court contract and motion for termination. The prosecutor's supporting declaration cited Harper's "failure to follow all terms and conditions of drug court." At a December 8 hearing, Harper's attorney acknowledged that he had received the petition and that he had discussed the petition with Harper. The trial court granted the petition to terminate Harper from the program at the December 8 hearing. Harper moved for reconsideration, but the trial court reaffirmed Harper's termination. The court found Harper guilty on all five counts of forgery and all five counts of identity theft. Harper appeals.

## DISCUSSION

First, Harper asserts that she did not receive adequate notice and opportunity to be heard prior to her termination from drug court. Second, she argues that the trial judge violated the appearance of fairness doctrine. Third, she argues that the trial court lacked sufficient legal basis to order her to pay

outstanding drug court costs. Fourth, she argues ineffective assistance of counsel in a statement of additional grounds for review. Finally, Harper argues that we should not award the State costs on appeal.

## I.   Notice and Opportunity To Be Heard

Harper argues that she did not receive sufficient notice and opportunity to be heard prior to her termination from drug court. She notes that the prosecutor's declaration supporting the petition for termination was deficient because it listed the grounds for termination as only: "failure to follow all terms and conditions of drug court."

Before terminating a participant from drug court, due process requires the court to provide notice and a hearing. State v. Cassill-Skilton, 122 Wn. App. 652, 658, 94 P.3d 407 (2004). The State must give the defendant an opportunity to contest the basis of termination and create a record of the evidence relied on to terminate participation. State v. Varnell, 137 Wn. App. 925, 930, 155 P.3d 971 (2007). Under the drug court contract that Harper signed, any violations of the drug court contract are sufficient grounds for termination. The contract gives the trial court discretion to terminate a participant.

The reasons for Harper's termination were no mystery. The trial court's November 10 order imposing sanctions listed Harper's missed education classes, a missed orientation, and a missed 12-step meeting as reasons for initial sanctions. At a November 10 hearing, the State, with Harper and her counsel present, orally notified the judge of these allegations. The trial court asked Harper and her attorney to address the accusations, and Harper accepted responsibility

for these missed appointments. A November 17 order imposing sanctions listed missed education classes, a missed orientation, and failed urinalysis tests as the reasons for a second round of sanctions. At a November 17 hearing, the court read the additional allegations aloud: missed education classes, a missed meeting, a missed orientation, and two positive urinalysis tests. Again, the court gave Harper an opportunity to address the accusations, and Harper admitted she had not made drug court a priority. At the close of the November 17 hearing, the State suggested it would soon be filing a petition to terminate Harper from drug court. At a December 8 hearing to address the State's petition to terminate, the court again asked both Harper and her attorney to address the accusations that she had not complied with the drug court requirements.

In Cassill-Skilton, a case where an appellant did not receive due process, there was "no record to show the basis of termination, any opportunity for a hearing on the alleged violations, nor any findings to show what evidence the court relied on in finding an agreement violation." 122 Wn. App. at 658. Here, the termination petition did not notify Harper of the specific conduct constituting grounds to conclude she had breached the drug court contract and should be terminated. However, the basis for termination was the numerous violations for which she had notice and had an opportunity to be heard. She does not claim these violations were an insufficient basis for termination or that some unstated violation was the basis for termination. She received adequate notice and opportunity to be heard.

4

II. Appearance of Fairness

Harper next argues that the trial court violated the appearance of fairness doctrine. On December 15, Harper made an oral motion requesting that the court reconsider its decision to terminate Harper from the program. She cites the court's statement in response to that motion that it had " 'a pretty good idea of what's going to happen' " regarding the outcome of that motion as evidence that the court had prejudged facts. And, Harper notes that during that same December 15 hearing, the trial judge tore up a letter Harper wrote to the judge.

We presume that a trial court performed its functions regularly and properly without bias or prejudice. Hickok-Knight v. Wal-Mart Stores, Inc., 170 Wn. App. 279, 318, 284 P.3d 749 (2012). The party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias. Id. Pursuant to RAP 2.5(a), we generally decline to address appearance of fairness arguments for the first time on appeal. Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n, 184 Wn. App. 593, 605, 337 P.3d 1131 (2014).

Harper never objected to the trial judge presiding over her case after it tore up the letter and commented on the likelihood of reconsideration. Despite Harper's failure to preserve the issue, we choose to briefly address the merits of her appearance of fairness argument.

The trial court's comment that it had "a pretty good idea" about the motion for reconsideration was not improper. In coming to this conclusion, the trial court noted that Harper may have set a drug court record for the number of violations, and she had been in the program for only five weeks. It was clear that this was

5

sufficient to justify termination. There was no indication of what basis could possibly be offered that would allow the trial court to overlook those violations. By stating it had "a pretty good idea" of the result of the motion for reconsideration, the court was not prejudging later facts, but instead acknowledging the already adjudicated violations working against Harper.

Tearing up Harper's personal letter did not constitute bias or violate the appearance of fairness. The letter appears to have been an attempt at an inappropriate ex parte contact with the judge. In re Marriage of Davison, 112 Wn. App. 251, 257, 48 P.3d 358 (2002) (reasoning that to maintain impartiality a judge is expected to "shield himself or herself from improper communications" such as letters). The judge did not read the letter, but tore it up at the December 15 hearing in front of the parties. He instructed Harper not to send him more letters because she had lost credibility with the judge. Tearing up the letter instead of merely returning it may have demonstrated frustration or disappointment with Harper. But, the court then granted Harper's motion for a continuance to set a motion for reconsideration. Granting the relief Harper requested is inconsistent with the claim that the court tearing up the letter was evidence of bias against Harper.

At the December 29 reconsideration hearing, the judge apologized to Harper for tearing up the letter and attributed his actions to frustration that Harper did not take advantage of the positive aspects of the drug court program. But, nothing related to the reconsideration motion demonstrated that the original order was the product of bias or that it was not supported by proof that the contract was violated. No new evidence or theory was offered that supported reversal of the

6

original decision to terminate. Harper has not carried her burden to show that the trial court violated the appearance of fairness doctrine in its handling of the reconsideration of the termination decision.

III. $30 Judgment

Harper argues that the trial court had no legal basis to require Harper to pay her outstanding drug court balance. She contends that this is a legal financial obligation (LFO) not specifically authorized by any portion of RCW 10.01.160, and therefore invalid. But, in this case, Harper signed a contract that stipulated to a $30 per week payment towards the cost of drug court treatment. Harper's argument that the $30 balance is an LFO and is invalid because it is not enumerated in RCW 10.01.160 fails. The drug court contract to which Harper stipulated provides an independent contractual basis for the $30 judgment.

IV. Statement of Additional Grounds

Harper argues she received ineffective assistance of counsel in a statement of additional grounds for review.[1] She notes that that she spoke only briefly with her attorney and had difficulty reaching him to discuss her case, and, therefore, was unfamiliar with the process and implications of her case. To show ineffective assistance of counsel, the appellant has the burden to show that counsel's performance was deficient and that the appellant was prejudiced by the deficient performance. In re the Pers. Restraint of Crace, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Scrutiny of counsel's performance is highly deferential and courts

---

[1] In the statement of additional grounds for review, she also argues that the trial court publicly humiliated her and treated her unfairly. We treat this as an appearance of fairness claim, which we addressed above.

will indulge in a strong presumption of reasonableness. In re Dependency of S.M.H., 128 Wn. App. 45, 61, 115 P.3d 990 (2005). Here, the record shows that Harper's counsel met with her multiple times and discussed the nature and implications of the proceedings with her. Harper has not met her burden to overcome the presumption of reasonableness. We reject her ineffective assistance of counsel argument.

V. Costs on Appeal

In her opening brief, Harper argues that she should not be liable for appellate costs and attorney fees should the State request them. In State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016), we determined that RAP 15.2(f) created a presumption of continued indigency throughout review. We follow Sinclair here. The trial court found that Harper lacked sufficient funds to pursue an appeal and determined that she was entitled to appellate counsel at public expense. The State has not overcome the continuing presumption of indigency. Therefore, we conclude that the State is not entitled to appellate costs.

We affirm.

WE CONCUR:

Trickey, ACJ

Appelwick, J

Cox, J.