IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) ) ) | No. 36670-7-III |
| SHENNEN MARGARET GOODYEAR-BLACKBURN, | ) ) ) | OPINION PUBLISHED |
| Appellant, | ) ) | IN PART |
| v. | ) ) | |
| SHAWN DAVID BLACKBURN, | ) ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Shawn Blackburn sought reimbursement from Shennen Goodyear-Blackburn for overpaid day care expenses. Shennen[1] claimed she incurred over $15,000 of day-care expenses, but could not produce cancelled checks or invoices. The trial court applied a 10-year statute of limitations and entered judgment in favor of Shawn for $43,300. We hold that the two-year catchall statute of limitations applies and reverse Shawn's judgment and remand for further proceedings.

---

[1] To avoid overuse of "Mr." and "Ms." when parties have the same last name, we often refer to them by their first names.

FACTS

In 2009, the parties agreed on terms to a legal separation, including primary placement of their son with Shennen. The agreement required Shawn to pay Shennen 100 percent of educational expenses. When the agreement was presented, the trial court interlineated "and day care" so the provision required Shawn to pay Shennen 100 percent of "educational and day care expenses." Clerk's Papers (CP) at 13.

In 2010, the trial court converted the legal separation into a dissolution. The final orders did not alter the earlier set child care obligation. As part of the dissolution decree, both parties were permitted to purchase the family home from the other by paying the other one-half of the net equity after a professional appraisal.

In June 2012, the Department of Child Services administratively set the monthly child care expense payment at $650. The parties do not dispute that Shawn paid that monthly amount.

At some point, Shawn questioned to what extent Shennen had incurred child care expenses for their son. Shawn and Shennen tried to resolve this question. Between May 2016 and March 2017, Shennen issued Shawn four checks totaling $3,500. In the memo area of the first $1,000 check, Shennen wrote: "Repayment settlement total [$]11,050 due @ 4/30 – this [$]1,000." CP at 110.

In September 2018, Shawn brought a motion requiring Shennen to show cause why he should not receive a $43,300 credit toward his purchase of Shennen's interest in the former family home. The amount reflects a $3,500 credit against monthly payments of $650 from June 1, 2012 through May 31, 2018.

Shennen opposed the motion. She asserted Shawn had agreed to various offsets that significantly reduced the debt he now claimed. Shawn disputed an agreement was reached.

Shennen claimed the governing statute of limitations was two years. In addition, she claimed she was entitled to offsets totaling $15,550 for child care, $7,423 for their son's unreimbursed medical costs, and $1,900 for additional amounts. The documentation she presented in support of her requests for offsets did not include checks or invoices. With respect to child care expenses, her documentation included signed verifications from two persons attesting to monthly amounts, each purportedly received to care for the couple's child. At Shennen's request, the trial court gave her additional time to produce checks and invoices to support her offset claims. After more than two months, she failed to provide any documentation.

In March 2019, the trial court issued its written ruling. It found there was no agreed reduction of the debt and, without clearly explaining why, it refused to apply

equitable estoppel or laches. The trial court noted that RCW 4.16.020 provides for a 10-year statute of limitations for past due child support obligations that accrue under an administrative order. Citing RCW 74.20A.020(6), which defines "administrative order," it concluded that the debt was a child support obligation that accrued under an administrative order. The trial court, therefore, entered judgment in Shawn's favor in the amount of $43,300.

Shennen timely appealed to this court. Shennen has since passed away and her estate has substituted in this and the lower court as the party in interest.

## ANALYSIS

### STATUTE OF LIMITATIONS

The parties disagree which statute of limitations controls. Determinations of which statute of limitations applies to a specific cause of action is a question of statutory construction this court reviews de novo. *City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).

Statutes are construed by applying well settled principles. *Cortez-Kloehn v. Morrison*, 162 Wn. App. 166, 170, 252 P.3d 909 (2011). The purpose of statutory construction is to give effect to the legislature's meaning and intent. *Roberts v. Johnson*, 137 Wn.2d 84, 91, 969 P.2d 446 (1999). "Statutes must be interpreted and construed so

that all the language used is given effect, with no portion rendered meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996).

If a statute is clear and unambiguous, it does not need interpretation. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Thus, we always begin with the statute's "'plain language and ordinary meaning.'" *Id.* (quoting *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). When interpreting a statute with undefined terms, this court will give those terms their plain and ordinary meaning, unless there is contrary legislative intent. *State v. Connors*, 9 Wn. App. 2d 93, 95-96, 442 P.3d 20, *review denied*, 193 Wn.2d 1041, 449 P.3d 656 (2019). If a statute is ambiguous and the intent of the legislature is unclear, the court may rely on legislative history, including bill reports, to help decipher the statute's meaning. *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992).

RCW 4.16.130 provides: "An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." Therefore, unless Shawn can point to a specific statute of limitations, this two-year statute controls.

Shawn cites both RCW 4.16.020(2) and RCW 4.16.020(3). He argues both control his cause of action.

RCW 4.16.020(2) provides in relevant part: "The period prescribed for the commencement of actions shall be . . . ten years . . . [f]or an action upon a judgment or decree of any court of the United States . . . ."

Shawn argues his action is one to enforce the original child support order, which is part of the divorce decree. In support of his argument, he cites a provision of the support order that states: "The obligor may be able to seek reimbursement for day care or special child rearing expenses not actually incurred. RCW 26.19.080."[2] CP at 11. This provision uses the word "may" and directs the parties to RCW 26.19.080, which sets forth limitations and procedures for seeking reimbursements for overpaid day care or special child rearing expenses. We construe the provision as notifying the parties of a statutory

---

[2] RCW 26.19.080(3) provides in relevant part:
> If an obligor pays court or administratively ordered day care or special child rearing expenses that are not actually incurred, the obligee must reimburse the obligor for the overpayment if the overpayment amounts to at least twenty percent of the obligor's annual day care or special child rearing expenses. The obligor may institute an action in the superior court or file an application for an adjudicative hearing with the department of social and health services for reimbursement of day care and special child rearing expense overpayments that amount to twenty percent or more of the obligor's annual day care and special child rearing expenses. . . . If the obligor does not have child support arrearages, the reimbursement may be in the form of a direct reimbursement by the obligee or a credit against the obligor's future support payments. If the reimbursement is in the form of a credit against the obligor's future child support payments, the credit shall be spread equally over a twelve-month period. . . .

6

right, not as creating a right in the decree for reimbursement. Shawn's argument would be stronger if the provision stated, "The obligor shall be liable for reimbursement of day care or special child rearing expenses not actually incurred." Because it does not say this, we conclude that Shawn's request for reimbursement of child care overpayments is not an action to enforce the child support order.

RCW 4.16.020(3) provides in relevant part: "The period prescribed for the commencement of actions shall be . . . ten years . . . [after] the eighteenth birthday of the youngest child named in the order for whom support is ordered for an action to collect past due child support . . . ."

Here, Shawn seeks reimbursement for overpaid child care expenses. He does not seek to recover past due child support. Overpaid child care expenses are not past due child support. We conclude RCW 4.16.020(3) does not apply.

The Estate argues the applicable statute of limitations is 12 months. It cites one sentence in RCW 26.19.080(3). We earlier set forth most of this subsection in our footnote 2. The one sentence relied on by the Estate provides: "If the reimbursement is in the form of a credit against the obligor's future child support payments, the credit shall be spread equally over a twelve-month period."

We reject the Estate's argument that RCW 26.19.080(3) provides a 12-month cap for overpaid child care expenses. That section provides a 12-month cap *if* the obligor parent seeks reimbursement by offsetting future child support payments. Here, Shawn does not seek reimbursement by offsetting future child support payments. Rather, he seeks a judgment to offset Shennen's one-half net equity in the former family home.

Because neither RCW 4.16.020(2) nor RCW 4.16.020(3) apply, we conclude the two-year catchall statute of limitations applies.[3] We remand for the trial court to enter an amended judgment based on a two-year statute of limitations.

Reversed and remanded.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

---

[3] Shawn does not argue that Shennen's four payments constitute an acknowledgment of the debt for purposes of recommencing the statute of limitations. We doubt the argument would have succeeded. Shennen never acknowledged the debt. Rather, she disputed it. Her four payments, coupled with the "Repayment settlement total [$]11,050" notation on the first check, reflect her willingness to pay a lesser amount.

DENIAL OF EQUITABLE RELIEF

The Estate contends the trial court erred by not applying equitable estoppel or laches. We disagree.

The trial court did not explicitly explain why it denied Shennen's request for equitable relief. But based on the parties' briefing below and on appeal, we can discern the trial court's reasons.

The trial court determined that Shawn was not equitably estopped from requesting full reimbursement because he had not agreed to a lesser amount. We see no error. Even if Shennen had established that Shawn had agreed to receive a lesser reimbursement, she did not perform the agreement. Under the law of accord and satisfaction, when a debtor fails to pay the lesser negotiated amount, the creditor may bring an action on the original disputed amount. *Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 685-87, 828 P.2d 565 (1992). Here, Shennen did not pay the purported negotiated amount of $11,050.

Nevertheless, the trial court found that Shawn had not agreed to a lesser negotiated amount. Equitable estoppel requires a party's claim to be inconsistent with a prior act or statement. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 601, 337 P.3d 1131 (2014). Shawn's request to recover the disputed amount,

9

therefore, was not inconsistent with any prior act or agreement. We conclude the trial

court did not err by refusing to apply equitable estoppel to this dispute.

The doctrine of laches is an implied equitable waiver arising when the plaintiff has

knowledge of existing conditions and acquiesces to them. *Buell v. City of Bremerton*, 80

Wn.2d 518, 522, 495 P.2d 1358 (1972). A defendant wishing to raise a laches defense

must prove three elements, "'(1) knowledge or reasonable opportunity to discover on the

part of a potential plaintiff that he has a cause of action against a defendant; (2) an

unreasonable delay by the plaintiff in commencing that cause of action; and (3) damage to

the defendant resulting from the unreasonable delay.'" *King County v. Taxpayers of King

County*, 133 Wn.2d 584, 642, 949 P.2d 1260 (1997) (quoting 15 LEWIS H. ORLAND &

KARL B. TEGLAND, WASH. PRACTICE § 651, at 478 (5th ed. 1996)).

Here, the Estate argues Shawn unreasonably delayed to bring this action until he

wished to purchase the family home. We do not discern any unreasonable delay. Shawn

had good reason to not earlier seek reimbursement. Reimbursement would have come

directly from Shennen and, thus, taken away from their son's care. Waiting until Shawn

could offset the family home purchase was not an unreasonable delay. We conclude the

trial court did not err by refusing to apply laches to this dispute.

The parties have not discussed whether Shennen's payment of $3,500 to Shawn should be credited to the reduced judgment. We suggest, but do not hold, that the law of accord and satisfaction might be applied to resolve that issue.

Reversed and remanded.

_____
Lawrence, Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.