JOHN W. LYZANCHUK, ET AL, *Respondents*, v. YAKIMA
RANCHES OWNERS ASSOCIATION, PHASE II, INC., ET AL,
*Appellant.*

2

*Roger L. Hillman* and *Cozen & O'Connor; Paul M. Larson, Gary R. Luloff,* and *Bogle & Gates,* for appellants.

*Russell J. Mazzola* and *Putney Mazzola,* for respondents.

SWEENEY, A.C.J. — John and Anita Lyzanchuk and six other couples (hereafter the Lyzanchuks) obtained a judgment rescinding a contract between Yakima Ranches Owners Association, Phase II, Inc. (Phase II) and Friend Construction. Friend Construction is owned by the president of the board of directors of Phase II, Clyde Friend. Mr. Friend appeals: (1) his court-ordered removal from the Phase II board of directors; (2) his personal liability as owner of Friend Construction for one-fifth of the attorney fees owed by Phase II to the Lyzanchuks; and (3) rescission of the contract, as an improper encumbrance of community property. Phase II appeals the award of attorney fees to the Lyzanchuks, contending the action did not create an immediate "common fund". We affirm the judgment rescinding the contract with Friend Construction and awarding

attorney fees and costs based on the common fund theory. However, we remand the award of attorney fees for recalculation. We also reverse the dismissal of Mr. Friend from the board of directors of Phase II and the imposition of a portion of the attorney fees and costs on Friend Construction.

I

FACTUAL BACKGROUND

Phase II is a nonprofit corporation organized in 1978 to provide for the maintenance of roads on Phase II properties and to provide for proper drainage of surface water over real property within its boundaries. All owners of Phase II properties are voting members of the Phase II corporation. Phase II is authorized to collect annual assessments levied against each tract in the Phase II development to pay for these improvements.

In December 1988, the board of directors of Phase II entered into a shaling and grading contract with Friend Construction. The contract provided for application of fractured basalt rock (shale) to Phase II roads and maintenance of these roads for a period of 6 years. Although members of the board of directors of Phase II solicited general road maintenance cost information from several contractors prior to this agreement, there is no evidence the board solicited bids or estimates with the specifications detailed in the contract. The membership of Phase II was not advised of the contract until the 1989 annual meeting.

Friend Construction is owned by Clyde Friend and his wife, Debbie. Mr. Friend had been a member of the Phase II board for approximately 10 years and was president of the board when the contract was executed. Neither Mr. nor Ms. Friend had experience with road construction or maintenance when they entered into the contract. Friend Construction did not become a licensed and bonded contractor until the year following the contract.

In January 1990, the Lyzanchuks, all voting members of Phase II, sued Phase II for damages and other equitable relief. Their complaint targeted the Friend contract and

other management decisions of the corporation which they claimed unjustly and inequitably benefited certain officers and directors. In April 1991, the complaint was amended to add the individual directors of Phase II as Defendants. Before trial, the Lyzanchuks again attempted to amend their complaint to request removal of the current directors and to bar them from holding further office; the court permitted amendment only as to Mr. Friend.

At the conclusion of the Lyzanchuks' case in chief, the individual directors moved to dismiss the complaint. The court granted the motion to dismiss for all directors except Mr. Friend.

On November 15, 1991, the court entered a judgment for the Lyzanchuks, rescinding the Friend contract for conflict of interest, and reducing the amount owed to Friend Construction for completed work by $56,784.25. It awarded the Lyzanchuks attorney fees and costs against Phase II on the basis that the litigation had resulted in a "common fund" benefiting all members of Phase II and required Friend Construction to reimburse Phase II for one-fifth of the Lyzanchuks' attorney fees. The one-fifth share was assessed against that portion of the debt still owed to Friend Construction by Phase II. The court also removed Mr. Friend from the board of directors and prohibited him from serving on the board until the year 2004.

Mr. Friend appeals following the denial of his motion for reconsideration. He contends (1) the court lacked the authority to remove him from the board of directors; (2) Friend Construction should not be required to indemnify the corporation by paying one-fifth of the Lyzanchuks' attorney fees; and (3) the breach of fiduciary duty was his separate tort and could not be used to encumber his innocent spouse's community property interest.

Phase II appeals, asserting the Lyzanchuks' litigation did not create an immediate fund with a discernible present value and therefore the award of attorney fees based on the common fund theory was erroneous.

II

## A. Court Removal of a Nonprofit
## Corporation Director

Mr. Friend contends that the court had no authority to remove a director or officer of a nonprofit corporation. He cites 2 William M. Fletcher, *Private Corporations* § 358, at 202 (perm. ed. rev. vol. 1990) for the proposition that "equity has no jurisdiction to remove corporate directors or officers on the ground of neglect or mismanagement of the affairs of the corporation."

The discussion in 2 William M. Fletcher § 358 does not distinguish between profit corporations and nonprofit corporations. According to some commentators, "[t]he modern trend is towards a more uniform treatment for officers and directors of not-for-profit and business corporations based in part upon the concept that their functions are similar." Edward Brodsky & M. Patricia Adamski, *Corporate Officers and Directors* § 21:03, at 4 (1993). Any policy considerations, however, which might justify treating directors of a nonprofit corporation and a profit corporation differently are not material for the purposes of this discussion. Both types of corporations are creatures of statute. We therefore look to the statutory scheme in an attempt to glean the intent of the Legislature. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 184-85, 829 P.2d 1061 (1992).

In the absence of a provision in the bylaws or articles for removal of a director, the Washington Nonprofit Corporation Act, RCW 24.03, provides for removal as follows:

> (1) Any director elected by members may be removed, with or without cause, by two-thirds of the votes cast by members having voting rights with regard to the election of any director, represented in person or by proxy at a meeting of members at which a quorum is present;

RCW 24.03.103(1). The Lyzanchucks argue that the statute is merely directory and invite us to extend the equitable jurisdiction of the courts to include removal of directors and officers for cause.

In contrast to the Nonprofit Corporation Act, the Washington Business Corporation Act, RCW 23B, specifically provides for judicial removal of a director or officer:

(1) The superior court of the county where a corporation's principal office, or, if none in this state, its registered office, is located may remove a director of the corporation from office in a proceeding commenced either by the corporation or by its shareholders holding at least ten percent of the outstanding shares of any class if the court finds that (a) the director engaged in fraudulent or dishonest conduct with respect to the corporation, and (b) removal is in the best interest of the corporation.

(2) The court that removes a director may bar the director from reelection for a period prescribed by the court.

RCW 23B.08.090(1), (2).

 When the Nonprofit Corporation Act and Business Corporation Act are read together, the legislative intent seems clear — the Legislature did not intend to grant courts the equitable power to remove directors and officers from nonprofit corporations. This conclusion is reinforced by the maxim of statutory construction "expressio unius est exclusio alterius" — a specific provision for removal inferentially implies exclusion of alternate methods of removal. *See Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969). It likewise appears to be the majority rule in this country. 2 William M. Fletcher, at 202.

Absent express statutory authority, we decline the invitation to extend the equitable jurisdiction of courts to include removal of nonprofit corporation officers and directors.

B. Attorney Fees Award from the "Common Fund"

1. Creation of the common fund and computation of fees. The trial court concluded that the Lyzanchuks' litigation saved Phase II $56,784.25 by rescinding the Friend contract and reducing the amount owed to Friend Construction for completed work. Based on the creation of this "common fund", it ordered Phase II to pay the Lyzanchuks' reasonable attorney fees and costs.

 Attorney fees may be awarded only if authorized by contract, statute or a "recognized ground in equity' ". *Bowles*

*v. Department of Retirement Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993) (quoting *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982)). Under the "common fund/common benefit" theory, a court may allow reimbursement of attorney fees when a fund has been created or preserved by a litigant for the benefit of others as well as the litigant. *Seattle Trust & Sav. Bank v. McCarthy*, 94 Wn.2d 605, 612, 617 P.2d 1023 (1980). Unlike other theories authorizing attorney fees, the award of fees is borne by the prevailing party rather than the losing party. *Bowles*, at 70.

Phase II contends that because the fund or benefit to the corporation was not "immediately" created or preserved by this litigation, the award of attorney fees was error. Its argument continues that the "benefit" to Phase II was merely the assurance of future preservation of a common fund. There is support in earlier Washington cases for its position. *See, e.g., Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 542, 585 P.2d 71 (1978); *Weiss v. Bruno*, 83 Wn.2d 911, 913-14, 523 P.2d 915, 89 A.L.R.3d 681 (1974). *But see Grein v. Cavano*, 61 Wn.2d 498, 506-07, 379 P.2d 209 (1963), wherein a common fund was found in the preservation of funds by forcing proper accounting and bookkeeping procedures in the future.

█ Recently, however, the Supreme Court held that the creation of future benefits qualified as a common fund for purposes of awarding attorney fees. *Bowles*, at 70-71. In *Bowles*, the fund included additional future pension benefits. The Lyzanchuks' litigation immediately created a savings of over $56,000 benefiting Phase II. Whether that fund was immediately available or will be available at a reasonable future time is immaterial to the award of attorney fees based on the common fund theory. *Bowles*, at 70-71. The award of fees was proper.

2. Reasonableness of attorney fees award. Phase II next contends that the amount of the attorney fees award is excessive in light of the value of the benefit to the corporation.

■ The "percentage of recovery" approach is used to calculate fees under the common fund doctrine, and the size of the recovery constitutes a suitable measure of the attorney's performance. *Bowles*, at 72. While 25 percent of the recovery obtained is the "benchmark" award in common fund cases, the range may be from 20 to 30 percent. *Bowles*, at 72. The percentage may be adjusted upward or downward or discarded altogether for the lodestar approach under "special circumstances". *Bowles*, at 73.

The $29,013.25 award of fees here was approximately 51 percent of the total benefit. This award must be recalculated under the percentage of recovery approach required by *Bowles*.

■ 3. Present value of the common fund. Finally, Phase II contends the $56,784.25 award is a future benefit which should be discounted to reflect its present value. *Hinzman v. Palmanteer*, 81 Wn.2d 327, 335, 501 P.2d 1228 (1972). Phase II neither presented evidence to support a discount to present value nor objected to the findings of fact which set the value of the fund at $56,784.25. There was therefore no evidence on which the trial court could have based a discount nor is there any evidence for this court to consider on appeal. *Mendelsohn v. Anderson*, 26 Wn. App. 933, 939-40, 614 P.2d 693 (1980). Moreover, the finding of fact became a verity on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

## C. Indemnification for Attorney Fees by Tortfeasor/Director

Mr. Friend contends the court erred in requiring him, as owner of Friend Construction, to indemnify Phase II for one-fifth of its payment to the Lyzanchuks for attorney fees and costs. Analysis of the issue is complicated for three reasons. First, the court apparently required reimbursement by Friend Construction based on Mr. Friend's bad faith,[1] yet none of the parties briefed or argued bad faith as

---

[1] "One-fifth of the plaintiffs' awarded attorney's fees and costs shall be set off against the amount that PHASE II presently owes Friend Construction. Clyde Friend and his marital community should not be allowed to profit because of his *bad faith* conduct with PHASE II." (Italics ours.) Finding of fact 2.39.

a basis for the imposition of attorney fees.[2] Second, the party benefited by the court's ruling — Phase II — takes no position on the issue and in fact made no claim for indemnification in the event it was required to pay the Lyzanchuks' fees and costs. Finally, although Mr. Friend notes that the Lyzanchuks did not file a stockholders derivative suit, he relies on *Interlake Porsche + Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 728 P.2d 597 (1986), *review denied*, 107 Wn.2d 1022 (1987) — a case based on a derivative suit:

> The obligation to reimburse a shareholder who brings a successful *derivative* action is an obligation of the corporation, not the losing party to the action, and attorney fees are to be recouped out of the common fund, if any, created by the action, not from an increased judgment against the defendant.

(Italics ours.) *Interlake*, at 522.

As we stated previously, the court has no power to award attorney fees as a cost of litigation absent a contract, statute, or recognized ground in equity. *Interlake*, at 521. The Lyzanchuks rely on the so-called ABC rule originally announced in *Armstrong Constr. Co. v. Thomson*, 64 Wn.2d 191, 196, 390 P.2d 976 (1964).[3] *See Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 757, 649 P.2d 828 (1982). This equitable right to fees requires three elements: (1) a wrongful act by A (here Friend) toward B (Phase II), (2) exposing B to litigation with C (Lyzanchuks), and (3) C being unconnected with the original wrongful act of A toward B. *Haner*, at 758.

Both the allegations and findings of wrongdoing here include improper acts by the would-be beneficiary of the rule — Phase II. Phase II, therefore, was not involuntarily exposed to litigation solely because of the conduct of Mr.

---

[2]Bad faith has been recognized as a basis for the imposition of attorney fees in a number of Washington cases. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 801, 557 P.2d 342 (1976); *Bentzen v. Demmons*, 68 Wn. App. 339, 349, 842 P.2d 1015 (1993); *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 509 n.2, 814 P.2d 1219, 821 P.2d 1235 (1991); *Victoria Tower Partnership v. Lorig*, 40 Wn. App. 785, 789, 700 P.2d 768 (1985).

[3]Also called "equitable indemnity". *See Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

Friend. Through its directors, it actively participated in the process of negotiating and contracting with Friend Construction for the Friend contract. Moreover, it makes no claim of impropriety on Mr. Friend's part in this action. Phase II, therefore, is not entitled to invoke this equitable rule as a basis for indemnification for any portion of the fees and costs awarded to the Lyzanchuks. Moreover, Mr. Friend, as a beneficiary of the common fund, will indirectly contribute to the fees and costs which the court ordered paid from the fund.

D. Effect of One Spouse's Tort on the Community Business

Mr. Friend next contends that both spouses must be represented at trial before the court can impose obligations based on the management of the community business. He also contends that, because he is the only community member before the court, only his separate property or his half of the community property should be subject to execution. He bases his argument on RCW 26.16.030, which provides in relevant part that:

> Property not acquired or owned, as prescribed in RCW 26.16.010 and 26.16.020, acquired after marriage by either husband or wife or both, is community property. Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property, except:
>
> . . . .
>
> (6) Neither spouse shall acquire, purchase, sell, convey, or encumber the assets, including real estate, or the good will of a business where both spouses participate in its management without the consent of the other:

Mr. Friend asserts that by virtue of the court's rescission of the contract, a community business liability was effectively incurred without the "consent" of his wife pursuant to RCW 26.16.030(6). He misinterprets the statute.

■ "Under the terms of RCW 26.16. 030, which permits either spouse to manage community property, service of process upon either spouse and a resulting judgment for a community obligation is enforceable against the community."

*Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 356, 613 P.2d 169 (1980) (suit against the marital community for debt incurred by husband during marriage). *See also Komm v. Department of Social & Health Servs.*, 23 Wn. App. 593, 597 P.2d 1372 (1979); *United Pac. Ins. Co. v. Discount Co.*, 15 Wn. App. 559, 550 P.2d 699 (1976).

Ms. Friend also had a right to intervene in this suit but did not. RCW 4.08.040 ("Husband and wife may join in all causes of action arising from . . . injuries to the property of either or both of them, or arising out of any contract in favor of either or both of them.").

■ Mr. Friend next contends that his was a separate tort, which should not be assessed against his "innocent" spouse's share of the community.[4] We disagree. In his capacity as director, he entered into a self-serving contract with a community business while serving as a director of Phase II, in breach of his fiduciary duty. This tortious act benefited the marital community and the community is therefore liable. *DeElche v. Jacobsen*, 95 Wn.2d 237, 244-45, 622 P.2d 835 (1980).

### E. Attorney Fees on Appeal

■ The Lyzanchuks have requested an award of attorney fees on appeal as a continuation of their entitlement under the common fund theory. Under the percentage of recovery approach used in computing common fund rule fees, attorneys are compensated according to the size of the benefit conferred, not the actual hours expended. Neither the Lyzanchuks nor Phase II has increased the value of the benefit conferred by the original litigation, therefore there is no basis for recovery of additional fees. *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 75, 847 P.2d 440 (1993).

---

[4]Mr. Friend relies on the following language: "For torts *not in the management of community business or for its benefit*, . . . the separate property of the tort-feasor should be primarily liable. If there is insufficient separate property, however, then the tortfeasor's half interest in community personal property shall first become liable . . .". (Italics ours.) *DeElche v. Jacobsen*, 95 Wn.2d 237, 246, 622 P.2d 835 (1980).

## III

### DECISION

The court's rescission of the Friend contract and award of attorney fees and costs based on the common fund theory are affirmed. The amount of the attorney fees award is reversed and remanded for recalculation based on *Bowles*. We reverse the imposition of one-fifth of the attorney fees and costs on Friend Construction. The court's removal of Mr. Friend as director of Phase II and its injunction against his serving on the board until the year 2004 is also reversed.

MUNSON, J., and CLARKE, J. Pro Tem., concur.

After modification, further reconsideration denied May 17, 1994.