# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PARKER ESTATES HOMEOWNERS ASSOCIATION, a Washington non-profit corporation, | No. 47402-6-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WILLIAM PATTISON/LESLEY PATTISON, | |
| Respondents, | |
| WILLIAM PATTISON/LESLEY PATTISON, | |
| Respondents, | |
| v. | |
| BLUESTONE & HOCKLEY REALTY, INC., an Oregon Corporation, doing business as BLUESTONE & HOCKLEY REAL ESTATE SERVICES, | |
| Appellant. | |

BJORGEN, C.J. — William and Lesley Pattison (Pattisons) own property in the Parker

Estates subdivision in Camas. They challenged the authority of the Parker Estates Homeowners

Association (PEHA) and Bluestone & Hockley Realty, Inc. (Bluestone) to impose membership

fees and a resulting lien for nonpayment by the Pattisons. In litigation to enforce the

membership fees and lien, the trial court granted the Pattisons' summary judgment motion and

denied PEHA and Bluestone's joint summary judgment motion. PEHA and Bluestone appeal both of the trial court's orders.

PEHA and Bluestone argue that the statute of limitations provision of RCW 4.16.040(1)[1] precludes the Pattisons' challenge to the validity of Bylaw 6.1, an amendment that established a seven-member board of directors. Further, they contend that PEHA's board of directors was properly constituted at the time it assessed fees and imposed a lien against the Pattisons because Bylaw 3.4 permits current directors to fill board vacancies in the absence of obtaining the requisite quorum to elect board members.[2]

We hold that although the Pattisons' challenge to Bylaw 6.1 is not precluded by the statute of limitations, Bylaw 6.1 was properly enacted pursuant to statutory default rules under the Washington Nonprofit Corporation Act, chapter 24.03 RCW. We hold also that PEHA's board of directors was properly constituted and its actions authorized because Bylaw 3.4, interpreted with RCW 64.38.025(2) and RCW 24.03.105, permits the current board to appoint directors to fill vacant board positions in the manner carried out by PEHA.

Accordingly, we reverse, award reasonable attorney fees to PEHA and Bluestone, and remand for the trial court to determine the amount of the award of reasonable attorney fees.

---

[1] In their briefing, PEHA and Bluestone cite RCW 4.16.130, the catch-all two-year statute of limitations. Their argument, however, focuses on RCW 4.16.040, the six-year statute of limitations for written contracts. Our analysis below of the issue is the same, whichever limitations provision is asserted.

[2] Bluestone also argues that the trial court erred by entering judgment against it. However, because we reverse in favor of Bluestone on other grounds, we do not address this contention.

FACTS

In 1994 the Parker Estates, a set of 195[3] subdivided lots, was recorded and platted. Bylaws were also recorded establishing PEHA, a nonprofit homeowners' association, to administer and manage Parker Estates.[4] The Bylaws set forth PEHA's organizational structure, powers, and duties. In accordance with its purpose, Bylaw 4.1 allows PEHA

> [t]o collect assessments from its members for the construction, maintenance and repair of common areas, open space areas and the wall that runs along Parker Road, and if any or if necessary, for roadways, easements, utilities and improvements.

Clerk's Papers (CP) at 102. In addition, under Bylaws 4.2, 4.3, 4.4 and 4.6, PEHA has the power to contract, to pay costs, to sue, and to maintain accounts. Bylaw 3.4 provides that the officers of PEHA "shall consist of a President, a Vice President, a Secretary, and a Treasurer." CP at 99. Collectively, the officers' duties include running PEHA's meetings, keeping records, and safekeeping funds. Bylaw 3.4 also states how officers shall hold office:

> All officers shall hold office for a terms [sic] of one (1) year from the date of electio[n], or until the respective successor of each officer is elected.

CP at 99-100. Bylaw 3.5 provides the election process for these officers:

> Election to officer [*sic*] shall be by majority vote. A meeting of the membership shall not be valid unless a majority of the total membership shall be present or represented at such meeting by proxy. Each member shall be entitled to one (1) vote.

CP at 100. Because there are 195 lots within Parker Estates, a quorum to hold a valid election of officers requires 98 members to be present or represented by proxy. Bylaw 3.1 and 3.2 define a PEHA member as an owner of one of the lots located in Parker Estates.

---

[3] The parties do not dispute this number in their briefs.

[4] The record does not provide PEHA's original articles of incorporation.

In July 1998, PEHA's officers sought to amend its Bylaws and proposed Bylaw 6.1, which specifically established a board of directors and fixed the number on the board at seven directors. The face of the recorded amendment states that Bylaw 6.1 was adopted "pursuant to action duly authorized by a majority of its Officers" and was "authorized by . . . [PEHA], by a . . . vote of 71 for and 2 against." CP at 108. PEHA created no separate provision for electing its board members, and instead relied on the officer election provisions, Bylaws 3.4 and 3.5, to elect its board members.

From the adoption of Bylaw 6.1 to early 2005, no records are available regarding the elections or actions of the PEHA board.

On November 17, 2005, a majority of the existing PEHA board members voted to retain Bluestone as property manager for PEHA. As property manager, Bluestone was empowered to collect yearly maintenance assessments.

On May 9, 2006 a quorum of the PEHA membership was represented at the annual election meeting and elected six board members to act on behalf of PEHA.[5] On May 23, 2006, that board voted in favor of a Financial Penalties Resolution, which set forth PEHA's procedure in order "to assess financial and other penalties against individual [PEHA] members in order to

---

[5] The Pattisons state that "there is no credible evidence that a quorum was obtained in 2006." Br. of Respondent at 11. Thus, this argument for affirming the trial court's order granting summary judgment in their favor rests on the assertion that that there is no genuine issue of material fact about the 2006 membership meeting: the undisputed evidence shows that a quorum was not obtained. Aside from the statement that "meeting minutes since 2006, clearly reflect that no quorums were ever in place for any membership meetings," Brief of Respondent at 9, the Pattisons' briefing does not include any argument or citations to the record supporting the proposition that the undisputed evidence shows that no quorum was present in 2006. Therefore, we decline to reach their assertion that no quorum was present at the 2006 membership meeting. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *accord Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 459, 266 P.3d 881 (2011); *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 338, 54 P.3d 665 (2002).

remedy non-monetary and monetary violations." *Id* at 178. On May 6, 2009, PEHA's board of directors passed a resolution for the Collection of Unpaid Charges, which created a series of late fees if any assessments or dues were not paid.

Since 2007, at least, it is undisputed that PEHA has failed to achieve a quorum at its annual meetings in order to elect board members. During this time period, the current board would nominate and elect individuals to fill the vacancies. Unable to achieve a quorum of the PEHA membership each year to hold an election, board members would continue to cycle in and out, filling the vacant director positions on the board.

On August 24, 2009, the Pattisons purchased a home in Parker Estates and became a member of PEHA. The previous owners of the Pattisons' home had prepaid PEHA's dues through May 31, 2010. In December 2010, the Pattisons received a demand notice from Bluestone for a payment of $207.80, which was $180 in yearly dues plus five late fee charges. The Pattisons failed to pay the fees.

Bluestone continued to send more demand notices and increased the amount of fees on the Pattisons pursuant to the 2006 Financial Penalties Resolution and 2009 Collection of Unpaid Charges Resolution. In late 2012, Bluestone referred the Pattisons' $962.61 debt to collections. In May 2013, a lien was placed against the Pattisons' property in the amount of $1,450.76.

PEHA filed a lawsuit against the Pattisons for collection of its money and lien. The Pattisons answered the complaint and asserted counterclaims against both PEHA and Bluestone as a third party defendant for usury, a frivolous lien, violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and a declaratory ruling. The root of the Pattisons' affirmative defense and counterclaims was that PEHA and Bluestone had failed to follow Washington law and PEHA's own Bylaws in creating a properly constituted board of directors. Therefore, the

Pattisons contended that PEHA and Bluestone had no authority to charge them with assessments and late fees or to file a lien against them.

Both PEHA and Bluestone filed answers to the Pattisons' third party complaint. All parties moved for summary judgment on their respective claims. The trial court orally ruled and issued a written order granting the Pattisons' summary judgment motion and denying the joint summary judgment motion by PEHA and Bluestone. Specifically, the trial court ruled that PEHA had failed to follow its own Bylaws when electing a board of directors, that PEHA had not obtained a quorum required to elect officers since at least 2006, that PEHA board members are not and were not properly elected, and, therefore, that the board had no authority to act for PEHA as applicable to the Pattisons.[6] Accordingly, the trial court determined all fees, penalties, and liens were null and void as to the Pattisons. The trial court did not directly rule on the validity of Bylaw 6.1.

PEHA and Bluestone appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *McCarthy v. Clark County*, 193 Wn. App. 314, 327, 376 P.3d 1127, *review denied*, 186 Wn.2d 1018 (2016). We construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 328. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing CR 56(c)). A genuine issue of material fact exists where reasonable minds could differ

---

[6] Although findings are superfluous in summary judgment orders, *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243 (1991), these findings express the reasoning for the trial court's order.

on the facts controlling the outcome of the litigation. *Id.* If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *Id.*

## II. VALIDITY OF BYLAW 6.1

PEHA and Bluestone argue that the statute of limitations provision in RCW 4.16.040 prevents the Pattisons' challenge to the validity of Bylaw 6.1's adoption process. Further, even if the statute of limitations does not apply, they contend that Bylaw 6.1 was properly enacted. For the reasons below, we hold that the Pattisons' challenge is not precluded by the statute of limitations, but that Bylaw 6.1 was properly enacted pursuant to statutory default rules and thus is currently valid.

### 1. Statute of Limitations

PEHA and Bluestone contend that the Pattisons cannot challenge Bylaw 6.1 because the six-year statute of limitations under RCW 4.16.040 for contracts applies. We disagree.

We review de novo whether a claim is time barred. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 599, 337 P.3d 1131 (2014). The statute of limitations is designed to protect individuals and courts from stale claims. *Id.* Generally, the statute of limitations does not run against a defense arising out of a transaction sued upon by a plaintiff. *Ennis v. Ring*, 56 Wn.2d 465, 471, 353 P.2d 950 (1959).

Here, PEHA, acting as the original plaintiff, asserted a claim to collect its fees against the Pattisons. The Pattisons, in the role of the defendants, asserted that Bylaw 6.1 was invalid to support their theory that the PEHA board was improperly constituted. Therefore, PEHA cannot claim the statute of limitations as a sword, when the Pattisons, as defendants, challenge the validity of Bylaw 6.1 from its inception.

Further, *Club Envy*, 184 Wn. App. 593 supports the Pattisons' ability to challenge the validity of Bylaw 6.1. In *Club Envy*, 184 Wn. App. at 599-600, RCW 64.34.264(2) of the Washington Condominium Act was at issue, which provided for a statute of limitations of one year to challenge the validity of an amendment to a condominium instrument created pursuant to that Act. The *Club Envy* court held that "if the [challenged] amendment was void from its inception because it was not '*adopted by the association pursuant to this section*,' then RCW 64.34.264(2)'s time limitation does not apply." *Id.* at 601 (quoting RCW 64.34.264(2)) (alternation in original). In coming to this holding, *Club Envy* cited with approval *Keller v. Sixty-01 Associates of Apartment Owners*, 127 Wn. App. 614, 621, 112 P.3d 544 (2005), for the proposition that the statute of limitations defense could preclude challenges to an amendment's specific provisions and actions taken pursuant to it, but not when the party challenges the validity of the amendment's adoption ab initio. *See Club Envy*, 184 Wn. App. at 600-01.

Similar to *Club Envy*, the Pattisons do not challenge the specific provisions of Bylaw 6.1. Rather, they argue that the amendment was void from its inception because of PEHA's failure to follow proper procedures in amending its Bylaws. Thus, even assuming arguendo that the six year contract statute of limitations under RCW 4.16.040 applies to Bylaws, the Pattisons are permitted to challenge the validity of Bylaw 6.1's adoption process under *Club Envy*.

Accordingly, PEHA and Bluestone's statute of limitations claim fails.

2. Default Powers to Amend Bylaws

Finding the statute of limitations defense inapplicable, we next examine the Pattisons' contention that Bylaw 6.1 is invalid because PEHA failed to obtain a quorum of the membership to amend its bylaws. PEHA's governing documents—the covenants, conditions, and restrictions (CCRs) and Bylaws—do not discuss the process for amending its Bylaws. Without guidance

from its governing documents, we are guided by statutory default rules under the Washington Nonprofit Corporation Act, chapter 24.03 RCW. *See Lyzanchuk v. Yakima Ranches Owners Ass'n, Phase II, Inc.,* 73 Wn. App. 1, 6, 866 P.2d 695 (1994).

RCW 24.03.070 provides that "[t]he power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the bylaws." Notably, at the time of Bylaw 6.1's adoption, PEHA's Bylaws did not specifically provide for a board of directors, but for four officers: a president, a vice president, a secretary, and a treasurer. RCW 24.03.005(3) defines a board of directors as "the group of persons vested with the management of the affairs of the corporation irrespective of the name by which such group is designated in the articles or bylaws." PEHA's officers were vested with the management of the organization's affairs, including running meetings, keeping records, and safekeeping funds. Even though the group of officers were not called a board of directors, default rules designated them as such because their duties were to carry out the management of PEHA. RCW 24.03.005(3). Thus, PEHA's board of directors, *i.e.* the four officers, had the power to amend the Bylaws. RCW 24.03.070; RCW 24.03.005(3).

In order to amend the Bylaws, RCW 24.03.110 provides that the "majority of the number of directors fixed by . . . the bylaws . . . shall constitute a quorum for the transaction of business," and "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." At the time of Bylaw 6.1's enactment, the fixed number of directors was four, which would require three directors to constitute a quorum and two of the three to vote in favor of adopting Bylaw 6.1. On its face, Bylaw 6.1 states that a "majority of its officers" authorized it. Without any challenge or evidence to the contrary, a "majority" is read for what it is: that at least three board members attended and two voted for

9

enacting Bylaw 6.1, thus satisfying the requirements of RCW 24.03.110 for amending the Bylaws. Accordingly, in applying statutory default rules, we hold that Bylaw 6.1 was properly enacted and thus is currently valid.

### III.   INTERPRETATION OF BYLAW 3.4

PEHA, through Bluestone, imposed fees, assessments and interest and placed a lien against the Pattisons' property. The Pattisons do not dispute that PEHA's governing documents empowered PEHA to conduct these actions. Rather, they argue that PEHA's board was not properly constituted in order to execute its powers. Indeed, in order for the PEHA board to act on behalf of the association, the board was required to be properly formed in a manner compliant with its governing laws. *See Hartstene Pointe Maint. Ass'n v. Diehl*, 95 Wn. App. 339, 345, 979 P.2d 854 (1999). PEHA and Bluestone argue that the board was properly constituted under Bylaw 3.4 because that provision, together with RCW 64.38.025(2) and RCW 24.03.105, permit the current board to appoint directors to fill vacant board positions until a director can be elected. We agree that this is a proper interpretation and application of PEHA's governing laws.

We afford great deference to an organization's interpretation of its Bylaws and will only invalidate an interpretation if it is arbitrary and unreasonable. *Davis v. Pleasant Forest Camping Club*, noted at 171 Wn. App. 1027 (2012) at *3 (unpublished) (citing *Couie v. Local Union No. 1849 United Bhd. of Carpenters & Joiners of Am.,* 51 Wn.2d 108, 115, 316 P.2d 473 (1957)). If an organization's rules are conflicting and confusing, we are more likely to find its interpretation neither arbitrary nor unreasonable. *Anderson v. Enter. Lodge No. 2*, 80 Wn. App. 41, 47, 906 P.2d 962 (1995).

Bylaw 3.4 reads: "All officers shall hold office for a terms [sic] of one (1) year from the date of electio[n]*,* or until the respective successor of each officer is elected." CP at 71. Bylaw

10

3.5 requires a majority of the membership to be present in order for the election to be valid. In applying these provisions, PEHA has held an election each year attempting to obtain a quorum of its members in order to elect directors. It is undisputed that at least from 2007 on PEHA has failed to obtain a quorum of its membership in order to elect directors. In the face of failing to obtain a quorum, the currently constituted board nominated and appointed members in order to maintain a functional board. We believe that PEHA's process was a proper interpretation and application of Bylaw 3.4 and not arbitrary or unreasonable.

This interpretation of Bylaw 3.4 falls in line with the pertinent governing statutes, which allow a board of directors to appoint directors to fill board vacancies and serve out the unexpired portion of the "term" of his or her predecessor. RCW 64.38.025(2), part of the homeowners' association act, reads:

> The board of directors shall not act on behalf of the association . . . to elect members of the board of directors . . . *but the board of directors may fill vacancies in its membership of the unexpired portion of any term.*

(Emphasis added.) Similar to RCW 64.38.025(2), RCW 24.03.105 of the Washington Nonprofit Corporation Act reads:

> *Any vacancy occurring in the board of directors . . . may be filled by the affirmative vote of a majority of the remaining board of directors even though less than a quorum is present. . . .* A director elected or appointed, as the case may be, to fill a vacancy shall be elected or appointed *for the unexpired term of his or her predecessor in office.*

(Emphasis added.)

The Pattisons argue that the statutory appointment power is limited to the "term" defined in Bylaw 3.4, which would be only for one year. As noted, Bylaw 3.4 states that officers shall hold office "for a terms [sic] of one (1) year from the date of electio[n], or until the respective successor of each officer is elected." CP at 71. The effect of this provision is that an officer's term of office is for one year or, if no election occurs,

11

extends until the election of his or her successor. Thus, when no board member is elected, as occurs when no quorum can be garnered, directors can continue to serve until an election occurs.[7] If a director resigns before a successor is elected, even after the initial one-year period, the board can appoint someone to fill the unexpired portion of that term; that is, until a successor is validly elected. Stated simply, until a valid election for a director position, the term of the director does not expire, so the board can continue to appoint willing individuals to fill vacancies in such positions.

The Pattisons argue that *King County Department of Community & Human Services v. Northwest Defenders Association*, 118 Wn. App. 117, 75 P.3d 583 (2003) disallows PEHA's process for appointing directors to vacant positions and allowing them to cycle in and out after resignation. In *King County,* the board of directors for Northwest Defenders Association, a nonprofit organization, resigned. *Id.* at 120, 123-24. That nonprofit for years made decisions and executed contracts without a board, including a contract with King County, contrary to its bylaws. *Id.* After King County had Northwest Defenders audited, its officers had the resigned board of directors' consent to the selection of a new board of directors. *Id.* at 124.

At issue on appeal was whether the default language in RCW 24.03.100[8] permitted resigned board members to act on behalf of Northwest Defenders until new board members were properly elected. *Id.* at 124-25. The *King County* court held that the resigned board members

---

[7] RCW 24.03.005(3) defines a board of directors as "the group of persons vested with the management of the affairs of the corporation irrespective of the name by which such group is designated in the articles or bylaws." Because the officers carried out this duty before a board of directors was explicitly created through Bylaw 6.1, we interpret references to "officers" in the Bylaws to also refer to the designation of board members.

[8] RCW 24.03.100, in part, reads that each director for a nonprofit corporation "shall hold office for the term for which the director is elected or appointed and until the director's successor shall have been selected and qualified."

could not act on behalf of Northwest because it would endorse a "notion that corporate directors can be held in office against their will until they elect their replacements." *Id.* at 125-26. In coming to this holding, the court also stated in reference to RCW 24.03.100:

> The general rule is that statutes, charters or bylaws providing that an officer or director will serve until a successor is chosen do not preclude resignation, *nor do they operate to continue that officer or director in office until a successor has been chosen. Koven v. Saberdyne Systems, Inc.,* 128 Ariz. 318, 322, 625 P.2d 907, 911 (1980). The rationale for this rule is sound: "When a director resigns, the inaction or refusal of a board of directors should not impose upon him or her a future liability or responsibility which that resigning officer does not desire to undertake."

*Id.* (emphasis added) (citation omitted).

This excerpt from *King County* could be read to suggest that a board member cannot continue to serve in perpetuity until a new director is elected. *King County*, however, dealt with forcing resigned board members to continue acting on behalf of the organization. Here, in contrast, PEHA board members have resigned, but did not continue to act on behalf of PEHA. Rather, the remaining board members appointed willing directors to fill the now vacant positions. Unlike *King County*, there is no reliance on actions of the resigned directors to fill a vacancy or to execute PEHA's powers.

Further, to the extent this language would prevent PEHA's approach to filling vacancies, we find *King County*'s reasoning to be inapposite in a situation where the board members volunteer to be appointed and continue to want to serve. As Community Associations Institute, amicus curiae, point out, there are approximately 10,150 homeowners associations located in Washington. These homeowners associations must be given room to interpret and apply their own governing documents as long the result is neither arbitrary nor unreasonable.

PEHA has attempted to duly elect board members every year. In the absence of a quorum of its membership, it is permitted to remedy that situation by interpreting and acting

13

pursuant to Bylaw 3.4, RCW 64.38.025(2), RCW 24.03.105—all of which allow an appointed board member to serve out the unexpired portion of a "term"; that is, until a quorum can be reached and a proper annual election can be held. Accordingly, we hold that the trial court erred to the extent it determined that the PEHA board was improperly constituted and that it had no power to assess or collect fees or to impose liens against the Pattisons.

## IV. ATTORNEY FEES

PEHA and Bluestone ask for trial and appellate attorney fees and costs pursuant to Bylaw 5.3(2) and 7.3, which read:

> Each and every assessment made pursuant to the terms of this agreement shall be a lien in favor of the association and against the property of the owner. . . . The court shall award reasonable attorneys' fees to the prevailing party in any action brought to enforce or collect such assessment.

CP at 104 (Bylaw 5.3(2)).

> In the event suit of [sic] action is instituted to enforce any of the terms of this agreement, the prevailing party shall be entitled to recover from the other party such sum as the court may adjudge reasonable as attorneys' fees at trial or on appeal of such suit or action, in addition to all other sums provided by law.

CP at 106 (Bylaw 7.3).

We award attorney fees only if authorized by a contract, statute, or recognized ground in equity. *Hawkins v. Diel*, 166 Wn. App. 1, 9, 269 P.3d 1049 (2011). The relationship between PEHA and its members, which includes the Pattisons, is one of contract through its Bylaws. *See Spokoiny v. Washington State Youth Soccer Ass'n*, 128 Wn. App. 794, 801, 117 P.3d 1141 (2005). PEHA and Bluestone are the prevailing parties on appeal in defending their actions under PEHA's Bylaws, which included assessing fees and imposing a lien against the Pattisons. Accordingly, we award them attorney fees and costs under Bylaw 5.3(2) and 7.3.

14

CONCLUSION

We hold that Bylaw 6.1 was properly enacted and validly created a seven-person board of directors. We hold also that PEHA's board was properly constituted under Bylaw 3.4, as interpreted consistently with RCW 64.38.025(2) and RCW 24.03.105. Thus, the board's exercise of PEHA's powers against the Pattisons was valid. Accordingly, we reverse the trial court's grant of the Pattisons' summary judgment motion and its denial of the joint summary judgment motion by PEHA and Bluestone. We also remand for the trial court to determine the amount of the reasonable attorney fees awarded by this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Maxa, J.