# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD BLUE, | No. 54962-0-II |
| Respondent, | |
| v. | |
| LARRY FALE, president of HVCC, and HIGH VALLEY COMMUNITY CLUB, INC., a non-profit corporation established under Title 24 RCW, | UNPUBLISHED OPINION |
| Appellants, | |

VELJACIC, J. — High Valley Country Club, Inc. and its president, Larry Fale, (hereinafter collectively referred to as HVCC) appeal the trial court's order granting Richard Blue's motion for summary judgment and denying their cross-motion. HVCC argues that the trial court erred in concluding that the original restrictive covenants recorded against properties in High Valley Park had expired in June 1991 and that its current restrictive covenants were invalid and unenforceable. The restrictive covenants prohibit lot owners from engaging in noxious or offenses activities. HVCC has enforced these restrictive covenants against Blue by assessing fines against him. HVCC also argues that the trial court erred in denying their request for attorney fees and costs. Both parties request attorney fees and costs on appeal.

We hold that the trial court did not err in concluding that, as a matter of law, the original restrictive covenants expired in June 1991 because a majority of the lot owners did not vote to extend its duration beyond the 30 year period set out in that instrument. Therefore, its current

restrictive covenants are invalid and unenforceable against Blue. We conclude that the trial court did not err in denying HVCC's request for attorney fees and costs. We also deny both parties' requests for attorney fees and costs on appeal. Accordingly we affirm the trial court's order granting Blue's motion for summary judgment and denying HVCC's cross-motion.

## FACTS

High Valley Park is a recreational community in Packwood, Washington which offers various amenities, such as a clubhouse, golf course, and swimming pools, for the enjoyment of its members.[1] HVCC is a nonprofit homeowners' association (HOA) which oversees and manages the operations of High Valley Park. HVCC operates pursuant to its articles of incorporation, bylaws,[2] and the Washington nonprofit corporation act (WNCA), chapter 24.03 RCW.

In 1962, the community's developer recorded restrictive covenants against certain properties in High Valley Park. Relevant here, the covenants prohibited lot owners from engaging in "noxious or offensive activit[ies]" and also prohibited any activity "which may be or may become an annoyance or nuisance to the neighborhood." Clerk's Papers (CP) at 144.

The 1962 set of restrictive covenants discuss the method by which lot owners could amend or cancel its provisions. In relevant part, the 1962 restrictive covenants provided that,

> R.W. Anderson and Angelyn H. Anderson, husband & wife, and High Valley Park, Inc., a Washington Corporation, owners of real estate here-in after described for the consideration of the mutual benefits to be derived by them and their successors in ownership of said real property, hereby imposes upon and against said real estate the following restrictions, reservations and covenants hereinafter described as "Restrictions." Any use which the said owners above may make of any of said real estate shall be in conformity with these Restrictions and any sales of any portion or portions of any or all said real estate shall be subject to

---

[1] Members are defined as the lot owners within High Valley Park.

[2] The copy of the 1962 and 1981 bylaws provided to us are unsigned. However, the 1989 bylaws are signed.

these Restrictions. The real estate referred to above is situate[d] in the County of Lewis, State of Washington and is described as follows:

High Valley Park, 2nd High Valley Park, 3rd High Valley Park, Inc., and 4th High Valley Park, Inc.

RESTRICTIONS

. . . .

9) The above covenants are to run with the land and shall be binding upon all parties owning, leasing or using said lots until June 1, 1981, at which time said covenant[s] shall be automatically extended for a period of 10 years, unless by vote of a majority of the then owners of lots affected by this agreement, it is agreed to CHANGE or CANCEL said covenants in whole or in part. At any time during [the] life of these restrictions, the restrictions can be amended or changed by a majority vote of the lot owners.

CP at 144.

In 1990, the HVCC Board of Trustees (the Board) prepared for the expiration of the 1962 restrictive covenants. The Board notified lot owners of an upcoming vote for new, replacement covenants in an April 1991 newsletter. A ballot was mailed out to all 714 lot owners. Only 339 ballots (47.5 percent) were returned.[3] Of those voting, 260 members voted in favor of new, replacement covenants and 55 voted against them.

On July 11, 1991, HVCC recorded the new, replacement covenants with the Lewis County auditor. Like the 1962 restrictive covenants, the 1991 covenants prohibited lot owners from engaging in "noxious or offensive activit[ies]" and also prohibited any activity "which may be or become an annoyance to owners of lots or detract from the value of lots within the property." CP

---

[3] The number of returned ballots appears to be unclear from the record. An October 2012 newsletter stated that 339 ballots were returned. But Julia Ashley, the secretary for the Board, stated that 315 ballots were returned. At the hearing on HVCC's and Blue's cross-motions for summary judgment, counsel for HVCC stated that 339 (47.5 percent) was the correct number. Therefore, we will utilize the 339 figure.

at 151-52. And like the 1962 restrictive covenants, the 1991 covenants ran with the land for a period of 20 years with an automatic 10 year extension.

Subsequently, the restrictive covenants were amended by mail-in vote in 1997, 2004, 2005, and 2018. All amendments received favorable vote by a majority of the voting lot owners, but not a majority of all lot owners.

Over the years, High Valley Park lot owners have disagreed as to whether the 1991 restrictive covenants and subsequent amendments were valid and enforceable.[4] The disagreement stemmed from what the lot owners believed to be the required number of votes to pass the 1991 covenants. One side believed that over 50 percent of all 714 lot owners had to vote in favor of the covenants for them to be valid. The other side believed that a majority of the votes actually cast was sufficient.

Blue is a lot owner in 7th High Valley Park.[5] In 2019, Blue began receiving notices of fines for maintaining more than one trailer, recreational vehicle (RV), and outbuilding on his lot. HVCC claimed that Blue's activities violated the provision of the restrictive covenants which prohibit noxious or offensive activities. As of June 2020, Blue has accrued $1,700 in HOA fines.

On July 22, 2019, Blue filed a complaint for declaratory judgment and injunctive relief against HVCC and its current president, Fale. The parties filed cross-motions for summary judgment. Blue argued that the current restrictive covenants were invalid and unenforceable because a majority of the lot owners did not vote to extend the 1962 restrictive covenants. HVCC

---

[4] In fact, disagreement reached a point where in May 2011, Jack Hubbert, the president of HVCC at the time, recorded a notice of termination of protective covenants, conditions, and restrictions with Lewis County believing that the 1962 restrictive covenants had expired in June 1991. The HVCC retracted that notice on August 18, 2014.

[5] The same 1962 restrictive covenants were recorded against Blue's lot in 1966.

argued that the current restrictive covenants were valid and enforceable against Blue because only a majority of voting lot owners was needed to approve the extension of the 1962 restrictive covenants. HVCC also requested attorney fees and costs in their cross-motion.

The trial court agreed with Blue. It concluded that paragraph 9 of the 1962 restrictive covenants was not ambiguous and required an amendment by majority of the lot owners; not a majority of those voting. Because "[HVCC] did not obtain a majority vote of the lot owners to amend the covenants in 1991," the court concluded that the "1962 covenants expired in [June] 1991." CP at 440. Accordingly, the court entered an order granting Blue's motion for summary judgment and denying HVCC's cross-motion. The court also denied HVCC's request for attorney fees and costs.

HVCC filed a motion for reconsideration pursuant to CR 59, which the trial court denied. HVCC appeals.

ANALYSIS

HVCC argues that the trial court erred in concluding "that paragraph 9 of the original covenants required a vote of [a] majority of all lot owners (51 percent of all lot owners), instead of a majority vote (51 percent of the votes cast, provided a quorum is present) to make changes to the duration of the covenants in 1991." Br. of Appellant at 3. We disagree.

I. STANDARD OF REVIEW

We review an order on cross-motions for summary judgment de novo, engaging in the same inquiry as the trial court. *Wilkinson v. Chiwawa Communities Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 819, 394 P.3d 446 (2017); CR 56(c). We may affirm a

trial court's disposition of a motion for summary judgment on any ground supported by the record. *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 753 n.9, 310 P.3d 1275 (2013).

II.    LEGAL PRINCIPLES OF RESTRICTIVE COVENANT INTERPRETATION

The interpretation of a restrictive covenant presents a question of law we review de novo. *Wilkinson*, 180 Wn.2d at 249. When interpreting a restrictive covenant, we apply the rules of contract interpretation. *Id*. The primary objective in contract interpretation is determining the drafter's intent. *Id*. at 250. The drafter's intent is a question of fact, "'[b]ut where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Id*. (quoting *Ross v. Bennett*, 148 Wn. App. 40, 49-50, 203 P.3d 383 (2009)).

"In determining the drafter's intent, we give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.'" *Wilkinson*, 180 Wn.2d at 250 (quoting *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)). "We examine the language of the restrictive covenant and consider the instrument in its entirety." *Wilkinson*, 180 Wn.2d at 250. "'An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective.'" *Kiona Park Estates v. Dehls*, 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021) (quoting *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012)). "'[W]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.'" *Dehls*, 18 Wn. App. 2d at 335 (quoting *Byrne v. Ackerlund*, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987)).

"Washington courts follow the context rule of contract interpretation, which allows a court to consider extrinsic evidence to determine the relevant intent." *Dehls*, 18 Wn. App. 2d at 335. "'Extrinsic evidence is . . . used to illuminate what was written, not what was intended to be written.'" *Wilkinson*, 180 Wn.2d at 251 (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 697, 974 P.2d 836 (1999)). Such evidence includes "'the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.'" *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 274, 279 P.3d 943 (2012) (quoting *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.*, 76 Wn. App. 267, 275, 883 P.2d 1387 (1994)). We, however, do not consider extrinsic "'[e]vidence that would vary, contradict or modify the written word' or 'show an intention independent of the instrument.'" *Wilkinson*, 180 Wn.2d at 251 (quoting *Hollis*, 137 Wn.2d at 695).

III.    THE 1962 RESTRICTIVE COVENANTS EXPIRED AFTER JUNE 1, 1991

HVCC argues that the trial court erred in its interpretation of the 1962 restrictive covenants. More specifically, in a strained argument, it contends that the trial court erred in concluding that the first sentence of paragraph 9 controlled the 1991 mail-in vote as opposed to the second sentence. HVCC contends that the difference in the language "by vote of a majority of the then owners of lots affected by this agreement" as compared to "by a majority vote of the lot owners" as used in the second sentence suggests that the authority to amend the covenants in the first sentence only applied to a pre-June 1, 1981 vote to change or cancel the covenants' duration; it argues that the second sentence applied to all other changes. Br. of Appellant at 7, 16-17. Because "the vote to amend the covenants took place in 1991, [HVCC argues that] the specific first sentence is not applicable and the court must look to the second sentence, which is the more general term and applies to changes at any time, not just in 1981." Br. of Appellant at 17. We disagree.

First, though HVCC takes issue with the trial court's reasoning, we are not concerned with such arguments, as we are not bound by the trial court's reasoning on de novo review of a summary judgment ruling. *See Washburn*, 178 Wn.2d at 753 n.9.

Second, HVCC's argument parsing the difference between the first and second sentences of paragraph 9 is inapposite because both sentences require a vote of a majority of the lot owners. Therefore, looking at either "by vote of a majority of the then owners of lots affected by this agreement" or "a majority vote of lot owners," we, in no circumstance, arrive at the place where the drafters meant "a majority of those who voted." *See* CP at 144. Because such an interpretation would defeat the plain and obvious meaning of paragraph 9, we decline to follow in the strained analysis proposed by HVCC. *Wilkinson*, 180 Wn.2d at 250.

Here, the plain and obvious meaning of paragraph 9 required an affirmative vote of a majority of the 714 lot owners to extend the durational period of the 1962 restrictive covenants. Because there is no genuine issue of material fact that only 260 out of 714 lot owners voted to extend the durational period of the 1962 restrictive covenants, which is not a majority of the owners, the instrument expired after June 1, 1991, as a matter of law. Accordingly, we affirm the trial court's order granting Blue's motion for summary judgment and denying HVCC's cross-motion.

HVCC's remaining arguments all rest on the phrase "a majority vote of the lot owners" in the second sentence of paragraph 9. Specifically, HVCC contends that dictionary definitions, the WNCA, case law, its governing documents, and subsequent conduct all support their interpretation that the phrase "a majority vote of the lot owners" really means "a majority of *voting* lot owners." HVCC also contends that we should accept its interpretation of paragraph 9 of the 1962 restrictive

covenants because its interpretation is neither arbitrary nor unreasonable and complied with the general plan of development. We disagree.

HVCC first cites to Black's Law Dictionary for the proposition that "majority vote" means a majority of the votes cast. Black's Law Dictionary is not dispositive. We are not interpreting the phrase "majority vote," but rather "a majority vote of lot owners" and "vote of a majority of the then owners of lots affected by this agreement." As discussed above, "we give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.'" *Wilkinson*, 180 Wn.2d at 250 (quoting *Mains Farm Homeowners Ass'n*, 121 Wn.2d at 816). Because HVCC's interpretation would defeat paragraph 9's plain and obvious meaning, HVCC's argument fails.

HVCC then argues that the default rule in the WNCA, former RCW 24.03.090, provides for passage of business by majority vote of "members present" and that this supports its interpretation of paragraph 9. Br. of Appellant at 19.[6] Again, we are not asked to interpret what the phrase "majority vote" means, but rather we are asked to interpret the meaning of "a majority vote of lot owners" and "by vote of a majority of the then owners of lots affected by this agreement." Further, business passage rules for a non-profit corporation are simply inapplicable to the imposition of covenants on private real property. This argument fails.

HVCC next argues that the "governing documents" of the association allow for a majority vote of a quorum to pass business of the corporation. Br. of Appellant at 20-22. HVCC asks us to conflate the imposition of covenants in the 1962 declaration with the corporate bylaws governing the association as a nonprofit corporation. In this case, one does not govern the other.

---

[6] As of January 1, 2022, membership quorum and voting requirements are addressed in RCW 24.03A.440.

The passage of business may proceed consistent with the bylaws, but imposition of restrictive covenants on real property is not the business of the corporation; it is a matter for all the lot owners. As the covenants provide, their imposition may only be extended via a majority vote of "lot owners" or "then owners of lots." *See* CP 144-45, 207-08, 217-18. This argument fails.

HVCC again argues that "majority vote" means "majority of those who voted," seeking support from the use of the phrase in passing legislation. Again, the issue is not what constitutes a "majority vote," but instead what constitutes a "majority vote of lot owners" or a "vote of a majority of the then owners of lots." *See* CP at 144. This argument fails.

HVCC argues that its subsequent conduct of amending the covenants five times over 30 years should influence our interpretation of the plain language of the original restrictive covenants. But this only shows that HVCC believed that its interpretation was correct, which we conclude above is not the case. Because we will not consider extrinsic evidence that would vary, contradict or modify the written word or show an intention independent of the instrument, we reject HVCC's reliance on subsequent conduct. *See Wilkinson*, 180 Wn.2d at 251.

HVCC asserts that that we should accept its interpretation of paragraph 9 because "courts afford great deference to an organization's interpretation of its governing documents and will only invalidate an interpretation if it is arbitrary and unreasonable." Br. of Appellant at 27-28. HVCC relies on *Parker Estates Homeowners Ass'n v. Pattison*, 198 Wn. App. 16, 391 P.3d 481 (2016), for the proposition. However, *Parker Estates* dealt with an HOA's interpretation of its own bylaws, not restrictive covenants. *Id*. at 26-31. Accordingly, this argument fails.

HVCC also argues that their interpretation should be adopted—in contravention of the plain language of the original restrictive covenants—because it is consistent with the overall development plan. In support of this proposition, HVCC cites to *Wilkinson* but *Wilkinson* does

not stand for the proposition that we reject the plain and ordinary language of covenants requiring a majority of lot owners to alter the covenants when it would further the ethereal concept of the overall development plan.

Rather, *Wilkinson*, stands for the proposition that the authority of a majority of owners to adopt new covenants, or amend existing ones in order to place new restrictions on the use of private property, is limited. 180 Wn.2d at 255-56. "When the governing covenants authorize a majority of homeowners to *create* new restrictions unrelated to existing ones, majority rule prevails 'provided that such power is exercised in a reasonable manner consistent with the general plan of the development.'" *Id*. at 256 (quoting *Shafer*, 76 Wn. App. at 273-74). So, *Wilkinson* actually supports Blue's position here. *Wilkinson* only addresses the "general plan of development" as a *limitation* to what a simple majority of owners can do. That is, "when the general plan of development permits a majority to *change* the covenants but not create new ones, a simple majority cannot add new restrictive covenants that are inconsistent with the general plan of development or have no relation to existing covenants." *Id*. But none of this is material to the present case. As is evident, *Wilkinson* simply does not apply to this case.

Here, the 1962 declaration permitted a majority of the lot owners to change, cancel, or amend the covenants. But, as set out above, that instrument does not permit a majority of *voting* lot owners to pass new restrictions on High Valley Park; rather, a majority of the lot owners' approval was required. Accordingly, we affirm the trial court's order granting summary judgment to Blue and denying HVCC's cross-motion.

IV.     ATTORNEY FEES BELOW

HVCC argues that the trial court erred in declining to award its reasonable attorney fees and costs. HVCC requests such an award pursuant to article IV, section 2 of the 2018 Declaration of Protective Covenants, Conditions and Restrictions (2018 Declaration). We disagree.

"We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.'" *Kiona Park Estates*, 18 Wn. App. 2d at 339 (quoting *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). "We review whether there is a legal basis for an award of attorney fees de novo." *Allen v. Dan & Bill's RV Park*, 6 Wn. App. 2d 349, 372, 428 P.3d 376 (2018). In relevant part, article IV, section 2 of the 2018 Declaration provides that,

> In the event a Judgment, or Decree, or Court Order is entered in favor of [HVCC] or any owner in any action at law or in equity to enforce these provisions, the defendant in such action shall be liable for [HVCC's] or owner's court costs . . . and reasonable attorney fees.

CP at 171.

Here, the 2018 Declaration is invalid and unenforceable because a majority of the lot owners did not vote to extend the 1962 restrictive covenants prior to June 1, 1991, as discussed above. Additionally, HVCC is not the prevailing party. We affirm the trial court's order denying its request for attorney fees and costs.

V.      ATTORNEY FEES ON APPEAL

HVCC requests attorney fees and costs on appeal pursuant to RAP 18.1 and article IV, section 2 of the 2018 Declaration. Blue also requests attorney fees on appeal pursuant to RAP 18.1 and RCW 4.84.290. We deny both requests.

12

RAP 18.1(a) authorizes a party to recover reasonable attorney fees and expenses so long as the party "request[s] the fees or expenses" and "applicable law grants to [the] party the right to recover." The party must do so in a separate section of their opening brief. RAP 18.1(b).

As discussed above, article IV, section 2 of the 2018 Declaration provides that,

> In the event a Judgment, or Decree, or Court Order is entered in favor of [HVCC] or any owner in any action at law or in equity to enforce these provisions, the defendant in such action shall be liable for [HVCC's] or owner's court costs . . . and reasonable attorney fees.

CP at 171.

RCW 4.84.290 provides that, "if the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees for the appeal." RCW 4.84.250 authorizes an award of reasonable attorney fees to the prevailing party in "any action for damages" of $10,000 or less. "[R]eview of whether a given lawsuit constitutes an 'action for damages' under the statute is de novo." *T & B Wash., Inc. v. Dullanty*, 3 Wn. App. 2d 447, 450, 416 P.3d 722 (2018).

Here, as discussed above, the 2018 Declaration is invalid and unenforceable, and HVCC is not the prevailing party on appeal. Accordingly, we deny HVCC's request for attorney fees and costs.

With regard to Blue, RCW 4.84.250-.290 only apply to an action for damages. Blue's complaint is based on declaratory and injunctive relief, and is not an action for damages. Accordingly, we deny Blue's request for attorney fees on appeal.

We affirm the trial court's order granting Blue's motion for summary judgment and denying HVCC's cross-motion. We also affirm the trial court's order denying HVCC's request for attorney fees and deny both requests for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Lee, C.J.

Glasgow, J.